PEOPLE *v.* GOODMAN

1. CONTEMPT—CIVIL CONTEMPT—CRIMINAL CONTEMPT—DISTINCTION.
    Contempt proceedings are civil in nature if the intent of the sentence can be said to be a coercive influence on the future behavior of the defendant in order to secure compliance with a judicial decree, but where the sentence is one of *punishment* for behavior already committed in violation of a decree, the contempt action is criminal.

2. CONTEMPT — CRIMINAL CONTEMPT — SEVERITY OF PUNISHMENT — TRIAL BY JURY.
    There is a Federal constitutional right to trial by jury in an action for criminal contempt only if the punishment for the offense is severe.

3. CONTEMPT — CRIMINAL CONTEMPT — SEVERITY OF PUNISHMENT — TRIAL BY JURY.
    There is no right to trial by jury in a criminal contempt action where the maximum sentence upon conviction is imprisonment for six months and a fine of $1000.

Appeal from Wayne, Horace W. Gilmore, J. Submitted Division 1 March 6, 1969, at Detroit. (Docket No. 4,797.) Decided April 23, 1969.

REFERENCES FOR POINTS IN HEADNOTES
[1] 17 Am Jur 2d, Contempt §§ 4, 5.
[2, 3] 17 Am Jur 2d, Contempt § 64.

Complaint by the People of the State of Michigan, on the relation of William L. Cahalan, Prosecuting Attorney for Wayne County, against Albert J. Goodman, Hyman Goodman and Samuel Goodman for contempt of court. Defendants held in contempt. Defendants appeal. Reversed and remanded.

*William L. Cahalan,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Angelo A. Pentolino,* Assistant Prosecuting Attorney, for plaintiff.

*David M. Miro (Harry M. Nayer* and *Chris M. Youngjohn,* of counsel), for defendant.

BEFORE: FITZGERALD, P. J., and McGREGOR and V. J. BRENNAN, JJ.

FITZGERALD, P. J. Defendants own an apartment building at 124 Alfred street in the city of Detroit. On March 31, 1967, the Wayne county circuit court issued an injunction under the "padlock act"[1] preventing the defendants from using their property and building in a manner which would cause a public nuisance. This proceeding followed complaints concerning, and arrests of, prostitutes who were working out of the building.

Six months after the issuance of the injunction, Barbara Thompson was arrested while working in the building owned by defendants and subsequently convicted in the recorder's court of prostitution.

---

[1] CLS 1961, §§ 600.3801, 600.3805 (Stat Ann 1962 Rev § 27A.3801, 27A.3805). The judgment provided that the building be locked for one year unless the defendants within 10 days pay the costs of the proceedings, provide a $2,000 bond, and abate the nuisance. Violation of the 1-year injunction is punishable by contempt as provided in the act. CLS 1961, § 600.3820 (Stat Ann 1962 Rev § 27A.3820).

She was not a tenant of defendants' building and was using an unoccupied room in the pursuit of her trade. An affidavit was filed by the prosecutor's office referring to the above judgment; setting out her conviction, and stating that other violations were observed and still continue, supporting a request for an order to show cause why the defendants should not be found guilty of contempt. Defendants' answer alleged lack of knowledge or consent to any use of the premises in disregard of the March judgment of the court.

The show-cause hearing took place on December 1, 1967. Defendants raised the prime issue in this appeal at the outset of the hearing. In response to defendants' question as to whether the proceedings were for civil or criminal contempt, the trial court responded, "It is a good question, whether it is criminal or civil. Might have to have a jury if it's criminal, if demand were made." The trial took the form of a civil trial, and the defendants here allege that this was an error which seriously deprived them of many of the procedural safeguards, including a trial by jury, of a criminal proceeding. They were found guilty of contempt, and were each sentenced to serve 5 months in jail and pay a fine of $1,000.

Recent decisions of Michigan courts[2] clearly follow the rule of *Shillitani* v. *United States* (1966), 384 US 364 (86 S Ct 1531, 16 L Ed 2d 622), that when it appears the defendants conditionally carry the "keys of their prison in their own pocket"[3] then the action is essentially civil. If, in other words, the intent of the sentence can be said to be a coercive influence of the *future* behavior of the defendant in

---

[2] *Cross Company* v. *UAW Local No. 155 (AFL-CIO)* (1966), 377 Mich 202; *In re Colacasides* (1967), 6 Mich App 298, *affirmed* (1967), 379 Mich 69. Also, see *People.* v. *Yarowsky* (1926), 236 Mich 169.
[3] *In re Nevitt* (CA 8, 1902), 117 F 448, 461.

·order to secure compliance with a judicial decree, then the sentencing is a part of a civil proceeding. However, where the future behavior of the defendants can be said to have no influence over the use of the keys, such use already having been decreed and controlled by the court, then the sentence is one of *punishment* for behavior already committed in violation of the decree, and the contempt action, being unconditional as to result, is criminal. Such is the case here.

Defendants made no demand for trial by jury, but here argue that they were entitled to a trial by jury as a matter of law. We find that there was no violation of the general constitutional right of trial by jury. The Michigan Supreme Court, in the *Cross Case, supra,* specifically stated that a jury trial is not required in a trial for criminal contempt. Contempt is not a crime of the same gender as that protected by the usual constitutional provisions.[4] In addition, contempt in Michigan appears to be that type of "petty" crime referred to in *United States* v. *Barnett* (1964), 376 US 681 (84 S Ct 984, 12 L Ed 2d 23). Contempt there was not deemed a serious enough crime to impose the constitutional right to trial by jury in criminal offenses in keeping with the traditional posture of the courts toward contempt cases,[5] but the Supreme Court warned that where the punishment was severe, the right to a jury trial might become mandatory regardless of the fact that the character of the case was criminal contempt.[6] Criminal contempt remains a "petty"

---

[4] US Const, art 3, § 2; Am 6. Michigan Const 1963, art 1, § 20. See 63 Mich L Rev 700.

[5] See cases collected at *Green* v. *United States* (1958), 356 US 165 (78 S Ct 632, 2 L Ed 2d 672), concurring opinion; *United States* v. *Barnett, supra.*

[6] This brief warning in *Barnett* was solidified in *Bloom* v. *Illinois* (1968), 391 US 194 (88 S Ct 1477, 20 L Ed 2d 522), a case prospective in application only from May 20, 1968, but indicative of the

crime in Michigan, and a jury trial is not mandatory.

This cause having been determined to be criminal in nature, the usual standards of criminal procedure and evidence are attendant thereon.

Reversed and remanded.

All concurred.

---

trend toward providing jury trials in contempt proceedings when the offense is serious and not "petty". The distinction between "petty" and serious contempt is one of the sentences which could be imposed, and the cases of *Duncan* v. *Louisiana* (1968), 391 US 145 (88 S Ct 1444, 20 L Ed 2d 491) (Federal definition of "petty" used—"no more than 6 months in prison and a $500 fine); *Cheff* v. *Schnackenberg* (1966), 384 US 373 (86 S Ct 1523, 16 L Ed 2d 629) (6 months punishment as being "petty" contempt); *Bloom, supra* (24 months—serious and not "petty") would support a holding that the Michigan contempt statute (CLS 1961, § 600.3820 [Stat Ann 1962 Rev § 27A-.3820]) which provides for a punishment of not more than 6 months in prison and a $1,000 fine is such a "petty" crime so that a jury trial is not necessary.