SWORD v SWORD

Opinion of the Court

1. Contempt—Non-Support—Factors Considered—Statutes.

The statute which authorizes contempt proceedings for failure to obey a child-support order requires that before a court may punish a defendant for contempt it must find that the defendant is or could be of sufficient ability to comply with the support order, and such a finding must take into consideration all factors relevant to the defendant's ability to comply; therefore, a court's action was erroneous where the court inquired only of a defendant's physical ability to work and, finding him able to do so, sentenced him to jail for contempt for non-payment of support (MCLA 552.201).

2. Contempt—Non-Support—Imprisonment—Unconditional Terms —Statutes.

The statute which authorizes contempt proceedings for failure to obey a child-support order and provides for imprisonment for such contempt requires that a defendant be given the opportunity to secure his release by purging himself of his contempt, and a court is thereby prohibited from sentencing a defendant to an unconditional term of confinement (MCLA 552.201).

3. Contempt—Civil Contempt—Criminal Contempt—Punishment.

The purpose of confinement for civil contempt is remedial, not punitive; civil contempt seeks to coerce future compliance by imposing an indefinite term of punishment which must cease when the defendant complies, while criminal contempt imposes imprisonment of definite duration as punishment for a past offense.

References for Points in Headnotes
[1, 5] 24 Am Jur 2d, Divorce and Separation § 867.
Pleading and burden of proof, in contempt proceedings, as to ability to comply with order for payment of alimony or child support. 53 ALR2d 591.
[2, 3] 24 Am Jur 2d, Divorce and Separation §§ 754, 771.
[3, 4, 6] 24 Am Jur 2d, Divorce and Separation § 765.

4. CONTEMPT—NON-SUPPORT—CIVIL CONTEMPT—STATUTES.

> The contempt proceedings authorized by statute in support cases are purely civil in nature, and the court has no authority to change civil proceedings under the statute to criminal proceedings; therefore, the action of a court in sentencing a defendant to an unconditional term of confinement with no provision for release if the defendant purged himself of contempt, was erroneous, and had no effect on the nature of the proceedings (MCLA 552.201).

CONCURRENCE BY R. B. BURNS, J.

5. CONTEMPT—NON-SUPPORT—PUNISHMENT—FACTORS CONSIDERED—STATUTES.

> *The statute which authorizes punishment for contempt for non-support contemplates the consideration of all relevant factors in determining the defendant's ability to comply with the support order, not just his physical capabilities (MCLA 552.201).*

6. CONTEMPT—NON-SUPPORT—IMPRISONMENT—OPPORTUNITY TO PURGE.

> *A trial court exceeded its authority when it sentenced a defendant for contempt in a non-support case to an unconditional term of one year in jail without provision to allow the defendant an opportunity to purge himself of the contempt.*

Appeal from Genesee, Donald R. Freeman, J. Submitted Division 2 October 16, 1974, at Lansing. (Docket No. 18466.) Decided March 24, 1975. Leave to appeal applied for.

Wiley J. Sword was found to be in contempt of court for failure to make child support payments. Defendant appeals. Reversed and remanded.

*Frederick E. Salim (Delbert F. Green,* of counsel), for plaintiff.

*Delores Coulter,* Legal Services of Eastern Michigan, for defendant.

Before: D. E. Holbrook, P. J., and R. B. Burns and Bebeau,* JJ.

Bebeau, J. This case arose from the defendant's failure to make support payments due under an order of the Circuit Court of Genesee County entered July 24, 1961. The order obligated the defendant to pay $16 per week for the support of his minor children by a former wife, Mary Sword. On April 12, 1972, the Friend of the Court executed an affidavit stating that according to his records, the defendant, Wiley J. Sword, was in arrears in the payment of support due in the amount of $8,471. The court thereafter entered an order directing that an attachment for the arrest of the defendant be issued forthwith. The arrest occurred over one year later on April 1, 1973. At the time of his arrest, the defendant was receiving "ADC for unemployed fathers, through the grant to his new wife, Juanita Sword". Defendant had made no support payments in about five years for the children of his prior marriage and the Friend of the Court had much difficulty in finding his whereabouts.

On April 4, 1973, after spending three days in the county jail, Mr. Sword was brought before the court. The judge informed him that if he wanted to hire a lawyer at his own expense, the proceedings would be adjourned for that purpose. Mr. Sword responded affirmatively and the hearing was adjourned for 12 days. Bond was set in the amount of $1,500. The defendant was unable to post bond and was thus returned to the county jail.

On April 16, 1973, the contempt hearing was held. The defendant stated that he had been un-

* Circuit judge, sitting on the Court of Appeals by assignment.

able to hire counsel and was informed by the judge that he was not entitled to appointment of counsel, since this was a civil contempt proceeding. He was further informed that he had no right to a jury trial. The defendant then attempted his own defense. He read from a memo prepared by the Department of Social Services that he was presently receiving ADC for unemployed fathers and was enrolled in a work program, of some nature, but had been unable to find work. He then began to explain that the department was trying to find him work, but he was interrupted by the judge and informed that this was not the issue but that "[t]he issue is arrearage and physical ability to comply", which by definition "means such things as being in reasonably good health, not being hospitalized, not being required by doctor's directive or order to be unemployed because of physical hazard or physical danger to * * * health". Upon further questioning by the court, the defendant admitted that the arrearages alleged by the Friend of the Court were reasonably correct and that he had had the physical ability to work, although he continued to claim inability to find employment and this could imply this inability was also during the years he had incurred the arrearage. Finally, defendant admitted that he was in contempt. The court sentenced the defendant to one year in the county jail.

I

The statute which authorizes contempt proceedings for failure to obey a support order, MCLA 552.201; MSA 25.161, reads in pertinent part:

"Whenever the court shall be satisfied that the party is of sufficient ability to comply with said order, or by

the exercise of diligence could be of sufficient ability, and has neglected or refused to do so, said court may forthwith punish such person for contempt of said court by making an order placing such person on probation or may commit him to the county jail * * * or to any state prison or any penal institution in the state of Michigan for such period as said party shall *continue to be in contempt,* not to exceed 1 year, however." (Emphasis supplied.)

The statute requires that before the court may punish for contempt for non-support, it must find that the defendant is or could be of "sufficient ability" to comply with the support order. At the hearing below, however, the trial court inquired only to discover whether the defendant had the physical ability to comply. It excluded from consideration other factors which might have affected defendant's ability to provide support such as the availability of employment throughout the years during the creation of the arrearage. Because our statute contemplates consideration of all factors relevant to the defendant's ability to comply, and not merely the element of physical capacity to work, the action of the lower court must be reversed.[1] Any future determination of defendant's ability to support his children must take into account more than his apparent physical ability to work and must consider whether, under all the circumstances, he has "sufficient present ability" to obey the support order, or neglected, or refused to obey the order.

In addition, the trial court exceeded its authority when it sentenced the defendant to an unconditional term of one year in jail. The statute, MCLA 552.201; MSA 25.161, provides for imprisonment of

---

[1] *Cf. Commonwealth v Hendrick,* 220 Pa Super 225; 283 A2d 722 (1971).

the defendant only "for such period as said party shall continue to be in contempt, not to exceed 1 year". The statute has long been read to prohibit courts from sentencing defendants to unconditional terms of confinement and to require that defendants be given the opportunity to secure their release by purging themselves of their contempt. See OAG, 1935–1936, No 104, p 279 (September 26, 1935). Because the court sentenced the defendant with no provision for allowing him to purge his contempt at any time, the court exceeded its authority, and its judgment must be vacated. The court may have had in mind past non-performance of support obligations and defendant's present status, as classified by the Department of Social Services, of being an ADC unemployed father. Thus, the court may have concluded the defendant was simply "allergic" to the work process. However, the record indicates the confinement resulted from his physical ability to work plus his arrearage.

II

The assertion by defendant that this action is criminal is not tenable. The validity of defendant's claim depends upon holding that contempt proceedings for non-support involve criminal contempt and not civil contempt, for the Sixth Amendment by its terms, applies only to "criminal prosecutions".[2] Defendant's brief on appeal states:

"The one-year sentence imposed on the defendant in this case was unconditional and punitive and therefore

---

[2] "In all *criminal prosecutions,* the accused shall enjoy the right to a speedy and public trial, by an impartial jury * * * and to have the Assistance of Counsel for his defense." US Const, Am VI (Emphasis added.)

appropriate only in a criminal contempt proceeding. The sentence did not contain a provision permitting the defendant to purge himself at any time."

The distinction between civil and criminal contempt is well established in certain specific cases, though not without some judicial confusion. Confinement may be imposed in either type of contempt case, but its purpose in civil contempt is remedial and not punitive.

"Imprisonment in such cases is not inflicted as a punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do. The decree in such cases is that the defendant stand committed unless and until he performs the affirmative act required by the court's order." *Gompers v Buck's Stove & Range Co,* 221 US 418, 442; 31 S Ct 492, 498; 55 L Ed 797, 806 (1911).

In a case of civil contempt, therefore, the defendant carries the key to his prison door in his pocket and may at any time secure his release by complying with the court's order or demonstrating to the court that he will, upon release, comply. On the other hand, criminal contempt proceedings seek to punish past action rather than to secure future complaince.

"If the sentence is limited to imprisonment for a definite period, the defendant is furnished no key, and he cannot shorten the term by promising not to repeat the offense. Such imprisonment operates not as a remedy coercive in its nature, but solely as punishment for the completed act of disobedience." *Id.* at 442–443; 31 S Ct at 498; 55 L Ed at 806.

Civil contempt seeks to coerce future compliance by imposing an indefinite term of punishment which must cease when defendant complies; crimi-

nal contempt imposes imprisonment of definite duration as punishment for a past offense.

The statute governing contempt in support cases clearly authorizes judgments of civil contempt if the defendant is actually able to comply with the support order but refuses to do so. If at any time the defendant elects to comply with the court's support order, his punishment must cease. See OAG, No. 104, *supra.* The defendant may end his imprisonment at any time by choosing to support his children. The object of his imprisonment is, therefore, not to punish him, but to coerce his compliance with the support order. Because the object of the statute is coercive and the defendant retains the keys to his prison door in his pocket, the contempt proceedings authorized by the statute are purely civil in nature.

The court below sought to punish the defendant by imprisonment for one year, with no provision for release if the defendant purged himself of contempt. As explained above, however, the court has no power under the statute to impose what is branded as a criminal sanction, nor does the court have any authority to change civil proceedings under the statute to criminal proceedings. Thus, action of the court in excess of its authority had no effect upon the nature of the proceedings before it, and the defendant's case below remained a civil action as prescribed by the statute.

Some jurisdictions, it is true, have extended the right to appointed counsel and jury trials to indigent defendants in non-support or other civil contempt cases.[3] Such an extension, however, is unnecessary. The defendant in a true civil contempt proceeding has no need of the ritual of a full-scale criminal trial, for he may end his imprisonment at

---

[3] *Otton v Zaborac,* 525 P2d 537 (Alas, 1974).

any moment by merely complying with the court's order, or may convince the court after a short period of confinement that he will comply. His ability to secure his freedom at any time eliminates the necessity for the elaborate and costly proceedings involved in a criminal jury trial. Furthermore, the state, representing the people, has a substantial interest in the efficiency of proceedings designed to secure support for minor children. To require a pitched battle over the relatively simple issue of disobedience of a support order could lead to a further breakdown of the administration of justice in our courts as expenses and delays increase. Already the circuit courts handle thousands of support cases each year; in some circuits most of them are on a weekly "Fathers' Day" devoted exclusively to domestic relations cases. If each of these support cases were handled like a criminal trial, the burden on the courts would be staggering, which is of concern to many persons involved in trials.

The problems which would arise from making support cases criminal cases would be of both a legal and practical nature. In order to determine whether defendants are entitled to appointed counsel, for example, a trial court must hold an indigency hearing. This procedure in itself will cause delay, confusion, and inconvenience. In addition, it will place courts and defendants in an awkward legal situation. This is so because the subject of inquiry at an indigency hearing may involve matters which are the subject of inquiry at the contempt hearing proper, *viz.,* the financial resources of the defendant. In order to establish the procedural fact of indigency, the court must address the merits of the case and the defendant must risk the

compromise of his privilege against self-incrimination in order to establish his right to appointed counsel. The whole process would certainly be confusing, and it has already succeeded in causing difficulties for at least one court. See *Schutz v Helm,* 368 F Supp 423 (ED Wis, 1973).

Defendant claims that the case of *Argersinger v Hamlin,* 407 US 25; 96 S Ct 2006; 32 L Ed 2d 530 (1972), is authority for the claim that a person alleged to be in arrears for the payment of support for his minor children ordered in a divorce judgment is entitled to an attorney when brought before a court to show cause why he should not be cited for contempt, which may lead to confinement for any period of time not to exceed one year.

That case involved a criminal prosecution and any comments in the case by the Court which do not relate to criminal prosecutions would not be to the precise issue involved in this case. The issue there involved related to a criminal prosecution or proceeding and the Court held that a defendant, as such, is entitled to a lawyer if there is likelihood that incarceration may result from a conviction of a *felony* or a *misdemeanor.* It does not appear that *Argersinger, supra,* (a criminal case) is an appropriate guideline for proceedings in the nature of efforts to coerce payment of support.

Courts may not always be aware of the impact or consequences of decisions resulting from changes in interpretations of constitutions and, in this matter, we must be mindful that this problem is not confined only to support cases resulting from divorce, but also the matter of support resulting from paternity matters, support of mothers and children under 1966 PA 138,[4] and the Uniform

---

[4] MCLA 552.451 *et seq.;* MSA 25.222(1) *et seq.*

Reciprocal Enforcement of Support Act, 1952 PA 8.[5]

The problem may also arise from violation of restraining orders and orders requiring the release of specified chattels in divorce matters. If the courts are unable to enforce such orders by coercive confinement without a jury trial and appointed counsel by virtue of cases interpreting the constitution, the above statutes will become ineffective. In this field, the litigant expecting some relief through a court order is entitled to some effort on the part of the Friend of the Court and the court to enforce the order without the necessity of a criminal trial.

If an attorney must be appointed and a jury trial granted at support hearings because coercive confinement may result therefrom, and thus present the aspect of a criminal case, then all the ritual of GCR 1963, 785 should be required.[6] Self-incrimination must be prevented and any time the Friend of the Court "duns" the delinquent for support money, such delinquent should be advised of his right to remain silent, otherwise an incriminating response to the dun would be inadmissible.

The trial court knows not the facts when presented with the petition for hearing on a Friend of the Court complaint, except as to the amount of the arrearage, unless he has previously had the delinquent on prior occasions on the same problem. This knowledge may prevent a bench hearing on the issue before the judge possessed of such knowledge. Trial judges in Michigan are now disqualified from conducting a felony bench trial if the judge was required to read a portion of a

[5] MCLA 780.151 *et seq.;* MSA 25.225(1) *et seq.*

[6] May we anticipate in the near future the contention that one claiming to be an indigent should have the services of an attorney to assist him in presenting the facts of his claim of indigency.

preliminary transcript as a result of a motion filed
in the case. We may look forward to disqualifica-
tion if the judge conducted an indigency hearing,
or the delinquent was a periodic recipient of an
order to show cause.

Other respects of a contempt hearing would
necessarily change if it were to be treated as a
criminal prosecution or criminal proceeding. In
absence of the use of the delinquent defendant's
own testimony or admission, the court would turn
to the information obtained by the Friend of the
Court, *e.g.,* a recent discharge or quitting of em-
ployment. Yet, by virtue of the Sixth Amendment
right to confrontation, much information would be
inadmissible at the hearing, and the court could
not inquire of the delinquent the truth of that
matter. Further, the complainant's burden of proof
would rise to "beyond a reasonable doubt" from a
preponderance of evidence.

A likely consequence of the extension to defend-
ants of the criminal procedure in these matters
would result in the horrible plea bargaining proc-
ess now prevailing in criminal cases and the conse-
quence of such. An accomodation will be reached
as is done in criminal cases because of delays and
the clogging of court calendars. Once the word is
passed to delinquents that they are entitled to an
attorney and a jury at the expense of the taxpay-
ers, and that they have the protection of the
criminal procedure, it can safely be predicted, as it
was by many when wholesale plea bargaining
arrived, that the support payments will decrease
just as the crime rate increased. The courts will
lose the only tool available to coerce parents to
provide support for their children.

Should we be required to adopt the criminal
procedure in these cases, it would follow that, in

the event there is a finding adverse to the delinquent and sanctions of any nature are imposed upon him, the court would be required to render legal advice immediately thereafter as to the right to appeal and an attorney to assist in such, at public expense.

The Court of Appeals in *People v Goodman,* 17 Mich App 175, 178–179; 169 NW2d 120, 122 (1969), held:

"Criminal contempt remains a 'petty' crime in Michigan, and a jury trial is not mandatory.

This cause having been determined to be criminal in nature, *the usual standards of criminal procedure and evidence* are attendant thereon." (Emphasis supplied.)

*Goodman* involved the violation of an injunction under the "padlock act".[7] It was alleged that an injunction was violated. The hearing thereon was, according to this case, to be conducted as a criminal case. The type of problem before us was commenced as a civil matter, and the rule of *Goodman* should have no application here.

In 1973 about 54,000 divorce cases were disposed of by circuit courts, which includes those cases dismissed after filing. In the same year, there were about 20,000 criminal cases disposed of by the circuit courts of Michigan. *Annual Report of Supreme Court 1973.* Of the 54,000 divorce cases disposed of in 1973, it can be safely estimated 25,000 support cases are added to the thousands of files of the Friend of the Court each year and there remain until all children are 18 years of age. This should indicate the magnitude of a problem to be created by classifying this type of proceeding as a criminal prosecution. The Constitution was

[7] MCLA 600.3801; MSA 27A.3801.

established not only to insure justice to the individual but also to all the people and to promote the general welfare of the people.

Reversed and remanded.

D. E. HOLBROOK, P. J., concurred.

R. B. BURNS, J. *(concurring in result).* I concur in the result reached by my colleagues but in my opinion it is not necessary to decide or discuss any constitutional issue.

Defendant was found guilty of contempt of court, by the trial judge, and sentenced to one year in the county jail. MCLA 552.201; MSA 25.161. Defendant appeals and we reverse the trial court.

The defendant was brought before the court because of his failure to pay for the support of his minor children. He read from a memo prepared by the Department of Social Services that he was presently receiving ADC for unemployed fathers and was enrolled in a work program, but was unable to find work. He was interrupted by the judge and informed that was not the issue but that "the issue is arrearage and physical ability to comply", which by definition "means such things as being in reasonably good health, not being hospitalized, not being required by doctor's directive or order to be unemployed because of physical hazard or physical danger to health".

The contempt proceeding, for failure to obey a support order, is governed by MCLA 552.201; MSA 25.161, which reads as follows:

"Whenever the court shall be satisfied that the party is of sufficient ability to comply with said order, or by the exercise of diligence could be of sufficient ability, and has neglected or refused to do so, said court may forthwith punish such person for contempt of said court

by making an order placing such person on probation or may commit him to the county jail * * * for such period as said party shall contrive to be in contempt, not to exceed 1 year, however."

Before the court may punish a person for contempt for non-support, the trial judge must find that the party is or could be of "sufficient ability" to comply with the order. In the present case the trial judge inquired only to discover whether the defendant had the physical ability to comply with the order. He excluded from consideration other factors which might have affected defendant's ability to comply with the order.

The statute contemplates the consideration of all relevant factors in determining the defendant's ability to comply with the order, not just his physical capabilities.

In addition, the trial court exceeded its authority when it sentenced the defendant to an unconditional term of one year in jail. The statute provides for imprisonment while the defendant continues to be in contempt of court, not to exceed one year. In the present case the court did not allow the defendant any opportunity to purge himself.

Reversed and remanded for action consistent with this opinion.