J-A08008-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MARGARET WILSON, individually and as Administratrix of the Estate of JOHN WILSON | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : : : | |
| v. | : : : | |
| | : | No. 2053 EDA 2023 |
| THOMAS JEFFERSON UNIVERSITY HOSPITALS, INC., THOMAS JEFFERSON UNIVERSITY, AND JEFFERSON PHYSICIAN SERVICES | : : : : | |

Appeal from the Order Entered July 6, 2023
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  190902017

BEFORE:  BOWES, J., OLSON, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED JULY 8, 2024**

Margaret Wilson individually and as Administratrix of the Estate of John Wilson appeals from the order imposing sanctions on her counsel for failure to exchange expert reports. We conclude the trial court erred in finding counsel in contempt and imposing sanctions and therefore reverse.

This medical malpractice action commenced in September 2019, alleging negligent post-operative care against Thomas Jefferson University Hospitals, Inc., Thomas Jefferson University, and Jefferson Physical Services (collectively, "Jefferson"). A December 30, 2019, case management order required Wilson to submit expert reports by May 3, 2021. Jefferson's expert reports deadline was June 7, 2021.

Wilson filed numerous motions to compel discovery responses. **See** Motion to Compel Responses to Plaintiff's Integrated Interrogatories and Requests for Production of Documents, filed June 30, 2020; Plaintiffs' Motion to Compel More Specific Responses to Plaintiffs' Integrated Interrogatories and Requests for Production of Documents, filed Mar. 30, 2021; Plaintiffs' Motion to Compel Depositions, filed Apr. 14, 2021; Plaintiffs' Second Motion to Compel More Specific Responses, filed May 18, 2021; Plaintiffs' Motion to Compel Deposition of Corporate Designee, filed Aug. 2, 2021. The court denied the motion to compel more specific responses and ordered the parties to "work cooperatively through discovery." Order, dated Apr. 28, 2021. It denied as moot the second motion to compel more specific responses, "without prejudice to refile after the deposition of the corporate designee." Order, Sept. 14, 2021. However, it granted in part the motion to compel depositions. Order, May 24, 2021. Wilson further filed a motion for sanctions in December 2021 due to Jefferson's failure to provide deposition dates. She withdrew the motion that same month.

Between March 2021 and March 2022, the parties filed four motions for extraordinary relief requesting extensions of the discovery deadlines. The court granted the motions. Order, dated Mar. 26, 2021; Order, dated Sept. 9, 2021; Order, dated Dec. 3, 2021; Order, dated Mar. 10, 2022. Following the last extension, Wilson was to submit expert reports by December 5, 2022, and Jefferson was to submit them by January 3, 2023.

In February 2023, the court issued a "Notice of Prerequisite for Scheduling of Pre-Trial Conference – Medical Malpractice Program," that informed the parties that "[a]s a prerequisite to the Court scheduling a Pre-Trial Conference," counsel for plaintiffs must file "within thirty (30) days of the date of [the] notice," "the attached form certifying all parties have exchanged expert reports." Notice of Prerequisite for Scheduling Pre-Trial Conference, dated Feb. 21, 2023. The Notice provided that, "If the certification form is not filed, a Pre-Trial Conference may not be scheduled, sanctions may be issued upon motion of counsel, or the Court may take other appropriate action." *Id.*

In March 2023, the court issued a rule returnable requiring the parties to show cause "why sanctions should not be issued for failure to certify that expert reports have been exchanged in compliance with the current Case Management Order" and scheduling a hearing for April 24, 2023. On April 17, 2023, the parties filed a motion for extraordinary relief, requesting a 90-day extension, such that discovery would be complete by July 7, 2023, the plaintiff would submit expert reports by August 4, 2023, and Jefferson would submit expert reports by September 2, 2023.

At the hearing, Wilson's counsel stated that the parties had been working on scheduling three depositions, including the deposition of a "key doctor." N.T., Apr. 24, 2023, at 3. Jefferson's counsel said that the parties have had trouble scheduling the depositions due to counsel's and the deponents' schedules. He added that the parties had been discussing trying to resolve the case themselves or through mediation. *Id.* at 3-4. The court

remarked on the parties' missing the deadline and the backlog of medical malpractice cases in Philadelphia, held both counsel in contempt, and imposed sanctions of $100 per day:

> [T]his is a 2019 case. The plaintiffs' injuries were caused allegedly in 2017. You have had four revised case management orders from 2019 through 2023. The -- I don't know -- I won't comment on the reason for those revised case management orders, I'm sure there is a record of all of that. What you're saying here today is that you still haven't taken doctors' depositions in order to prepare to get your expert reports completed.
>
> I know of no – I'm hearing no reason other than the doctors' schedules or something along those lines for why you are so egregiously behind schedule on this case. There have been a number of times that both Judge Anders and I have, over the past year, have been urging you to move your cases forward so that we can get the case management of medical malpractice cases back under control.
>
> Where you are now is you will be five years out probably before you get to trial. I don't think that that's acceptable to you, [Wilsons' counsel]. I don't think that it's fair to the doctors who you represent, [Jefferson's counsel], or the hospitals, to have a case hanging over their heads for this amount of time. In Philadelphia we have had case management systems that have moved our cases along expeditiously. We've become known for the excellence of our case management system. The only body -- the only classification of cases that are not back from the pandemic is the med mal inventory. Every other part of the civil division has cooperated with us, has had to do a lot of hard work to get their cases back into the normal course of case management, which means that within two years you're ready for trial.
>
> In order to do that with the med mal caseload, we have had to go through a series of court intervention, which has been done with this case between the revised case management orders, the one year conference that I had with you in January where we discussed the fact that expert reports

- 4 -

needed to be on time, needed to be in. In January, the Plaintiffs' expert reports were due on December 5, 2022. Thats what we discussed in our one year conference and defendants were due January 3, 2023. Here we are in April and you still haven't taken the doctors' depositions to get your expert reports done. That is unacceptable.

You are both in contempt of the revised case management order. Filing another motion for extraordinary relief is not going to get you anywhere, gentlemen. All of our team leaders have been working with me and with Judge Anders to make sure that these cases get back on track. It's regrettable that a judge, any of us, have to be in the position of imposing sanctions on counsel for not prosecuting their cases and for not actively offering doctors for depositions, not actively abiding by the case management order.

Because I find that you both have been as responsible as each other for causing this delay, [the Wilsons' counsel], you'll be fined $100 a day until your expert reports have been exchanged, and, [Jefferson's counsel], you'll also be fined $100 a day until your expert reports have been exchanged.

*Id.* at 4-7.

Wilson's counsel responded that he had been brought in as co-counsel to an attorney who died during prosecution of the case, his client died during prosecution of the case, and the defense firm has had a change in personnel handling the case. *Id.* at 8. He stated Wilson has filed motions to compel and the parties have been trying to cooperate with each other and that both counsel have active trial schedules, and have been working diligently. *Id*. at 8-9. He stated that the parties were "doing . . . what [the c]ourt asks in trying in a civil way to work together to reach the end of it." *Id.* at 8. He stated there also had been issues with the doctors who have left the hospital. *Id.* at 9.

The court discussed the backlog of medical malpractice cases in Philadelphia and stated "to be evenhanded . . . with every case that I'm going to be handling, today, tomorrow, until things get back on track, that is the sanction that anybody is going to get if they don't have their expert reports in by the time of the rule hearing. So I need to be evenhanded." *Id.* at 13-14. Wilson's counsel asked the court, "Your Honor, . . . do I understand the [c]ourt is giving out the sanction without taking into consideration the individual issues in each case?" *Id.* at 14. The court responded that it did not "appreciate that question" and that it was "making the point that [it is] not sanctioning you in an amount of money that would be larger than the sanction that is being given out, if a sanction is being given out. That is the amount." *Id.* at 14-15.

After the hearing, the court denied the motion for extraordinary relief. It ordered that "sanctions are imposed upon [Wilson's] counsel for failure to exchange all expert reports in accordance with the current Case Management order in the amount of $100.00 per day from the date of this Order until such time as all of plaintiff's expert reports are produced." Order, filed Apr. 27, 2023.[1]

Wilson filed a Motion for Express Reconsideration Pursuant to Pa.R.A.P. 1701(b)(3) and for vacatur of the order entered April 27, 2023. The court granted the motion in part and vacated the order pending disposition of the

---

[1] The court issued a similar order imposing sanctions on Jefferson's counsel.

motion to reconsider the imposition of sanctions. In July 2023, the court denied the motion to reconsider the imposition of sanctions and reinstated the April 27, 2023 order. Wilson filed a notice of appeal.

Wilson raises the following issue: "Whether the trial court abused its discretion in imposing sanctions against [Wilson's] counsel for contempt?" Wilson's Br. at 3.

Wilson argues the trial court imposed sanctions without citing any statute or Rule of Civil Procedure. She argues the Rule Returnable directed that the parties appear to answer for the failure to comply "with the newly created [c]ertification process." *Id.* at 16. She notes that when imposing sanctions the court stated that it wanted to be "even handed" by issuing the same "sanctions to all parties across all medical malpractice cases for failing to comply with this" certification process. *Id.* Wilson argues that the Rules cited in the trial court's opinion addressing the sanction do not support the imposition of sanctions in this case.[2]

_____

[2] Wilson discusses the Rules the trial court cited in its Rule 1925(a) opinion. She argues that Rule 212.2(a)(5) addresses the submission to the trial court of a copy of the expert report and pre-trial memorandum and did not support sanctions here, particularly as the pre-trial conference was issued months after the imposition of sanctions. Further, she points out Rule 4003.5 reiterates the requirement of the exchange of expert reports by the pre-trial conference, but no pre-trial conference had been scheduled. Wilson further argues that Rules 1042.31 and 4019 are party-initiated remedies, and the court cannot impose sanctions under those Rules *sua sponte*. Wilson therefore argues that the court did not impose sanctions under the authority of a statute or rule.

Wilson next argues that the court's basis for imposing sanctions is unclear. She notes the court concluded the discovery delays were unacceptable and that the court did not consider the motions filed by Wilson and the court's disposition of those motions. Wilson notes that for the trial court to *sua sponte* initiate sanctions there must be an existing order that contains a clear directive for a party or attorney and a clear statement that sanctions could be levied. She argues this did not happen here. She notes that the Rule scheduling the April hearing advised that the court would consider the failure to comply with a certification process that was implemented after the Case Management Order that the Rule suggested contained the certification requirement.

Wilson maintains that the trial court did not issue a clear directive in the case management orders or state that a threat of sanctions existed if the directives were violated. She argues that "the trial court's opinion makes clear that its motivation for the imposition of sanctions here is the elevation of a newly created tool to address the trial court's recent frustration with a growing backlog of medical malpractice cases." *Id.* at 20-21.

Wilson argues that "the record does not sustain the factual and legal prerequisites for the trial court's purely punishment-oriented sanction." *Id.* at 21. It notes that the sanction could be used against counsel in future disciplinary proceedings and might have to be reported to another state's court when seeking *pro hac vice* admission or reported and explained to insurers, could impact the availability and cost of malpractice insurance, and

might have to be explained on a job application or if seeking election to a judicial position.

Wilson next argues the sanctions were not proper under the inherent authority of the court to enforce its orders. She argues the sanctions were for criminal contempt, as it was to "vindicate the dignity and authority of the trial court and to protect the interest of the general public." *Id.* at 23-24 (quoting ***Brocker v. Brocker***, 241 A.2d 336, 338 (Pa. 1968)). She further argues that the conduct occurred outside the court's presence and therefore would be indirect criminal contempt. She maintains that the conduct here did not meet the requirements to support a finding of indirect criminal contempt, as there was nothing "definite, clear, and specific," in the case management order or notice, the notice was not an order as contemplated by sanctions jurisprudence, the failure to serve the reports was not a volitional act, and there was no wrongful intent. Wilson further argues that if the court did find them in civil contempt, the evidence also did not support such a finding.

The trial court cites various Rules of Civil Procedure it claims permit it to impose *sua sponte* sanctions in this case. However, the court did not cite these Rules prior to or at the time of imposing sanctions. Rather, at the hearing the court stated it was finding counsel in contempt and stated in the Rule to Show Cause that sanctions could be imposed for failing to certify that expert reports have been exchanged in compliance with the Current Case Management Order. N.T., Apr. 24, 2023, at 6; Rule Returnable, dated Mar. 31, 2023.

Furthermore, the court made none of the determinations required to impose any type of sanction under the Rules cited. *See* Pa.R.C.P. 212.2(a)(5), (c) (governing pre-trial statements, including that they must have copies of expert reports, and stating "[w]here the trial judge determines that unfair prejudice shall occur as a result of non-compliance with subdivisions (a) and (b), the trial judge shall grant appropriate relief . . . ."); Pa.R.C.P. 4003.5(b) (governing discovery of identity of expert witness and providing that an expert that has not been disclosed shall not be permitted to testify but that a court may grant a continuance or other appropriate relief if the failure to disclose is due to extenuating circumstances); Pa.R.C.P. 4019 (permitting sanctions on motion of a party); Pa.R.C.P. 1042.31 (permitting sanctions on motion of party). Accordingly, we conclude the court did not properly impose sanctions under the Rules of Civil Procedure.

In *Triffin v. Janssen*, this Court concluded that a trial court cannot impose sanctions under Rule 4019 unless a party has moved for sanctions. 688 A.2d 1212, 1214 (Pa.Super. 1997). In doing so, the Court stated that the decision was "not meant to imply that the [trial] court was without authority to discipline the parties." *Id.* at 1215 n.3. It stated that "[i]f appropriate, the court could have found one or both of the parties in contempt and then pursued the requisite procedural steps for an adjudication of contempt." *Id.*

We therefore must determine whether the court properly found Wilson's counsel in contempt. The court maintains it found counsel in civil contempt. Here, we need not determine whether the contempt was civil or criminal, as,

- 10 -

even if the contempt was civil, the court erred in finding counsel in contempt and imposing sanctions.[3]

"Each court is the exclusive judge of contempt against its process, and on appeal its actions will be reversed only when a plain abuse of discretion occurs." **Sutch v. Roxborough Mem. Hosp.**, 142 A.3d 38, 67 (Pa.Super. 2016) (quoting **Mrozek v. James**, 780 A.2d 670, 673 (Pa.Super. 2001)).

"[I]n civil contempt proceedings the burden is on the complaining party to prove noncompliance by a preponderance of the evidence." **County of Fulton v. Secretary of Commonwealth**, 292 A.3d 974, 1004 (Pa. 2023) (quoting **Barrett v. Barrett**, 368 A.2d 616, 621 (Pa. 1977)) (alteration in **County of Fulton**).

To find civil contempt, "the order which is said to have been violated must be specific and definite." **Id.** (citation omitted). Further, noncompliance with a court order is not by itself sufficient to prove contempt. **Id.** To establish contempt, the complaining party must prove:

---

[3] Contempt can be civil or criminal. "What distinguishes civil from criminal contempt are the ends to be achieved, and the classification dictates what process is due the alleged contemnor." **County of Fulton v. Secretary of Commonwealth**, 292 A.3d 974, 1003-04 (Pa. 2023). "With regard to the ends to be achieved, the distinction depends upon whether the sanctions' 'dominant purpose is to punish for the violation of a court order [criminal contempt] or to coerce into compliance with the order [civil contempt].'" **Id.** at 1004 (citation omitted). Further, the Supreme Court has explained that whether the contempt is criminal or civil in nature "depends on whether the core purpose of the sanction imposed is to vindicate the authority of the court, in which case the contempt is criminal, or whether the contempt is to aid the beneficiary of the order being defied, in which case it is civil." **Id.** at 1028 (quoting **Commonwealth v. Bowden**, 838 A.2d 740, 761 (Pa. 2003)).

(1) That the contemnor had notice of the specific order or decree which he is alleged to have disobeyed;

(2) That the act constituting the contemnor's violation was volitional; and

(3) That the contemnor acted with wrongful intent.

*Id.* (citation omitted); *see also Habjan v. Habjan*, 73 A.3d 630, 637 (Pa.Super. 2013) ("[A] mere showing of noncompliance with a court order, or even misconduct, is never sufficient alone to prove civil contempt.") (citation omitted).[4] Contempt is not proven "unless the evidence establishes an intentional disobedience or an intentional [disregard] of the lawful process of the court." *Ricci v. Geary*, 670 A.2d 190, 192 (Pa.Super. 1996). Stated differently, to be found in civil contempt, "the alleged contemnor must know of the prohibited conduct, with any ambiguities, omissions, or uncertainties in the order construed in favor of the alleged contemnor, the act constituting the violation must be deliberate, and the act of the alleged contemnor must have been done with improper intent." *Sutch*, 142 A.3d at 68.

The case management order does not mention a certification of the exchange of expert reports and the Notice of Prerequisite does not notify the parties that monetary sanctions may occur without motion by the opposing party. Further, there is no support in the record for a finding any violation of

_____

[4] To establish indirect criminal contempt, the movant must establish beyond a reasonable doubt that: "(1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; (2) the contemnor had notice of the order; (3) the act constituting the violation must have been volitional; and (4) the contemnor must have acted with wrongful intent." *Commonwealth v. Walsh*, 36 A.3d 613, 619 (Pa.Super. 2012).

- 12 -

an order was volitional or that Wilson's counsel acted with improper intent. Wilson's counsel had been working with opposing counsel and they had requested additional time. There was no evidence that Wilson's counsel had any improper intent when he failed to file the certification. Rather, throughout the case, he had filed motions to compel and had worked with defense counsel, as ordered to do by the trial court.

The trial court has the ability to control its schedule, and it can deny a motion to extend deadlines. The parties will suffer any Rule-based sanctions that result from a failure to meet deadlines. Any sanction, however, must be based in the Rules or supported by contempt law, and must be based on actions in the individual case, not a court-wide policy for imposition of sanctions. Under the facts of this case, the record does not support the finding of contempt and imposition of $100 per day monetary fine for failure to file a certification of the exchange of expert reports. The trial court abused its discretion in finding counsel in contempt and imposing sanctions.

Order reversed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/8/2024