J-S15027-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| TRACEY ANN STERLING, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KAI WARD LYMAN, | |
| Appellant | No. 1231 EDA 2015 |

Appeal from the Order Entered April 21, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): November Term, 2013, No. 12-14703,
PACSES No. 664113647

BEFORE:  BENDER, P.J.E., OLSON and PLATT,* JJ.

MEMORANDUM BY OLSON, J.:                **FILED FEBRUARY 19, 2016**

Appellant, Kai Ward Lyman, appeals from the order entered on April 21, 2015, which held him in civil contempt for willful failure to comply with a support order.  We affirm.

The trial court ably explained the underlying facts and procedural posture of this case:

> This matter arose on the petition for contempt of support initiated by the court enforcement unit on behalf of Tracey Ann Sterling [(hereinafter "Mother")] on March 21, 2015. The final order of support for enforcement by [the trial court], entered on June 24, [2014], by [the Honorable Holly J. Ford,] affirmed the Support Master's interim order of support of January 28, 2014.
>
> . . .
>
> At the [contempt] hearing on April 21, 2015, [Mother] appeared with counsel and [Appellant] appeared with court-appointed counsel. . . .  [At the conclusion of the April 21,

*Retired Judge assigned to the Superior Court.

2015 contempt hearing, the trial court made the following findings of fact.]

. . . [Appellant] is 43 years old and a licensed attorney in good standing in Pennsylvania and Massachusetts having earned his law degree in 1998 from Northeastern University. [Appellant's] legal experience includes employment as a litigation associate with a large Boston law firm. [Appellant's] last full time employment as an attorney was with Teva Pharmaceuticals, where he held the position of Senior Legal Director earning in excess of $220,000.00 annually, in addition to a bonus, stock units[,] and stock options. In September 2013, [Appellant] was involuntarily terminated from this position. At the time of [Appellant's] termination, Teva Pharmaceuticals offered him a settlement agreement with a severance package which [Appellant] refused to sign. [Appellant] is currently involved in litigation, which he initiated, with Teva Pharmaceuticals.

Since his separation from Teva Pharmaceuticals, [Appellant] has held a series of seasonal or part-time positions. [Appellant] testified to holding a temporary seasonal job with Bloomingdales, which ended in mid-January 2015. At the time of the [April 2015 contempt] hearing, [Appellant] . . . [was] working two part-time jobs. [Appellant's] first job [was] as an independent contractor for Astoria Marketing providing lifeline phones to low income families, where he [was] paid on a commission basis. In addition, [Appellant] work[ed] as a salesman for Summit Retail Solutions, Inc., selling pillows to department stores or warehouses earning approximately [$12.00] per hour as an advance against commissions. Despite [Appellant's] assertion[s] that he [had] conducted a diligent job search to secure employment as an attorney, he was unable to produce any supporting documentation of his job search [at the April 21, 2015 contempt hearing].

At the time of the contempt hearing, [Appellant's] monthly support obligation[s were fixed by the above-mentioned court order that was entered on June 24, 2014. This order obligated Appellant to pay the following amounts in support: $2,260.14 per month for the support of the parties' two children; $1,874.45 per month for alimony *pendente lite*; and, $10.00 per month for arrears. Appellant] has

consistently failed to comply with the support order. [Appellant's] payments as shown on the [Pennsylvania Child Support Enforcement System (hereinafter "PACSES")] . . . screen reflect that his most recent payments preceding the contempt hearing were significantly below his monthly obligations[,] as he made payments of $216.38, $194.30, $246.55, $200.00, and $75[.00] for the month of April[] 2015. The total arrears balance due at the time of the contempt hearing was $35,273.56.

[Moreover, during the April 21, 2015 contempt hearing, Appellant testified that: he lives with a relative and does not pay any rent; he does not own a car and has no car payment obligations; he pays $75.00 per month for his own health insurance; and, "given the pendency of this action," he has chosen to not "hang out a shingle . . . [and] start a new [legal services] business." N.T. Contempt Hearing, 4/21/15, at 27-29, 46, and 49-50. Appellant also testified that he is representing himself in a variety of pending actions. According to Appellant:

> my spouse[] commenced this action in divorce support and custody. We have resolved much of the case. I commenced a civil action against my former employer pursuant to the May 15th, 2014 order of [the trial court], and I was required to bring the administrative claims regarding my ulcerative colitis before the [Pennsylvania Human Relations Commission], which I'm sure Your Honor knows is an administrative exhaustion requirement. And the time for that has come and so I have two actions or three; the action you brought and – well, one or two actions that arise from the termination of my employment.

> *Id.* at 53.]

. . .

After hearing the testimony and reviewing the exhibits of both parties as well as reviewing [Appellant's] payment history on [the] PACSES system, [the trial court found Appellant in civil contempt of the support order. As the trial court explained at the contempt hearing:

- 3 -

Your children deserve to have this money; your former wife deserves it; it's an order. It hasn't been modified yet. None of that is relevant as to the fact [] that you have the ability to earn this amount of money and you are not. And I am not finding that your representations that you work seven days a week making – you can make more money going to McDonald's than what you are making for $10 an hour or whatever the amount is per hour and then $10 for each cell phone application.

Your skills are far in excess of what that warrants so I am making a finding that you are willfully, willfully not earning the amount of money that you could earn.

*Id.* at 69-70.

The trial court then entered the following order:]

After a hearing, [Appellant] is found in civil contempt for willful failure to comply with the court order. [Appellant] is sentenced to [30] days incarceration. [Appellant] may purge himself upon payment of [$5,000.00] payable by cash, money order or bank cashier's check. The sentence is suspended. [Appellant] shall pay [$5,000.00] on or before April 28, 2015, or surrender himself to the court. A bench warrant shall be issued on April 28, 2015, if [Appellant] fails to appear. . . .

[Trial Court Order, 4/21/15, at 1 (some internal capitalization omitted).]

. . .

On April 23, 2015, [Appellant] filed a notice of appeal [from the trial court's April 21, 2015 order. Appellant] paid the purge amount of [$5,000.00] on April 24, 2015. . . .

[Moreover, it must be noted that Appellant] filed two prior appeals [to the Superior Court in this support matter. First, Appellant] appealed the order entered on June 24, 2014, by the Honorable Holly Ford, which denied [Appellant's] exceptions to the proposed order of the Master in Support [and ordered that Appellant pay the following amounts in support: $2,260.14 per month for the support of the

parties' two children, $1,874.45 per month for alimony *pendente lite*, and $10.00 per month for arrears]. . . . [Appellant also] appealed the order entered by the Honorable Anne Marie Coyle on October 29, 2014, which found [Appellant] in contempt of [the June 24, 2014] support order. The Superior Court consolidated those [two, earlier] appeals [and, on December 29, 2015, this Court affirmed both trial court orders. ***Sterling v. Lyman***, ___ A.3d ___, 2015 WL 9593972 (Pa. Super. 2015) (unpublished memorandum).]

Trial Court Opinion, 8/17/15, at 1-5 (some internal citations and capitalization omitted).

Appellant's current appeal concerns the trial court's April 21, 2015 order, which found him in civil contempt of the June 24, 2014 support order. Appellant raises the following claims in the current appeal:

[1.] Did the family court err, in finding contempt, by failing to determine support, or by enforcing support obligations, based upon [Appellant's] actual income, assets, and/or earning capacity after the termination of employment and/or failing to consider the existence of pending administrative and civil claims arising from the termination of [Appellant's] employment?

[2.] Did the family court, in finding contempt, err in apparently imputing the consideration contained in a confidential, withdrawn settlement offer regarding [Appellant's] former employment as income despite the unambiguous evidence that the settlement offer was withdrawn and by failing to consider the family court's orders of November 5 and 25, 2013?

[3.] Did the family court err by finding, or by failing to find, [Appellant's] willful noncompliance with any support order and/or willful effort to reduce employment income?

[4.] Did the family court err by failing to determine beyond a reasonable doubt that [Appellant], and/or by determining that [Appellant], had the ability to comply with the order

and/or the "present ability" to pay the purge factor on the day of the order?

[5.] Did the family court err in failing to make findings or conclusions that the evidence supported a present ability to pay the court ordered support and otherwise comply with the Pennsylvania and United States Constitutions?

Appellant's Brief at 5-6 (some internal capitalization omitted).[1, 2, 3]

_____

[1] For ease of discussion, we have re-numbered Appellant's claims on appeal.

[2] Even though Appellant paid the $5,000.00 purge condition, the current appeal is not moot because Appellant "remains subject to the orders of support and a failure to comply with them might again subject him to contempt proceedings." *Barrett v. Barrett*, 368 A.2d 616, 619 n.1 (Pa. 1977).

[3] We note that most of Appellant's claims on appeal are rehashed from his earlier appeal to this Court. In the earlier appeal, Appellant raised the following claims for relief:

> [1.] Did the [trial court] incorrectly calculate [Appellant's] income and earning capacity for purposes of determining support and finding no errors of fact or law with the [Support Master's] Report?
>
> [2.] [Did the trial court err i]n finding or concluding, over objection, that the consideration offered and withdrawn by [Appellant's] former employer, Teva, in its settlement offer, which was never received by [Appellant], could be imputed as income for support purposes after the termination of [Appellant's] employment was not for cause and [Appellant's] diligent employment search?
>
> [3.] In not recommending findings of fact and conclusions of law regarding actual earning capacity after the termination of employment, lack of willful efforts to avoid finding employment, and/or [Appellant's] diligent employment search, which the [trial] court found sufficient?

*(Footnote Continued Next Page)*

As this Court has explained, "[w]hen considering an appeal from an [o]rder holding a party in contempt for failure to comply with a court [o]rder, our [standard] of review is narrow: we will reverse only upon a showing the court abused its discretion." **Hopkins v. Byes**, 954 A.2d 654, 655 (Pa. Super. 2008). "An abuse of discretion occurs when a trial court, in reaching its conclusions, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will." **Kelly v. Siuma**, 34 A.3d 86, 91 (Pa. Super. 2011) (internal quotations and citations omitted). Thus, "even where the facts could support an opposite result, . . . we must defer to the trial [court] so long as the factual findings are supported by the record and the court's

*(Footnote Continued)* ——————————

> [4.] [Did the trial court err in] failing to determine beyond a reasonable doubt that [Appellant], and/or determining that [Appellant], had the ability to comply with the [support] order and/or the "present ability" to pay the purge factor on the day of the [contempt] order?
>
> [5.] [Did the trial court err b]y finding, or failing to find, willful noncompliance with any support order and/or willful effort to reduce employment income before imputing the confidential, withdrawn settlement offer [Appellant's] former employer, Teva Pharmaceuticals USA, Inc.?

Appellant's Brief at 6-7 in **Sterling v. Lyman**, ____ A.3d ____, 2015 WL 9593972 (Pa. Super. 2015) (unpublished memorandum).

legal conclusions are not the result of an error of law or an abuse of discretion." *In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012).

"The purpose of a civil contempt proceeding is remedial, and judicial sanctions are employed [] to coerce the defendant into compliance with the court's order, and [] in some instances[,] to compensate the complainant for losses sustained."[4] *Philadelphia Marine Trade Ass'n v. Int'l Longshoremen's Ass'n*, 140 A.2d 814, 818 (Pa. 1958). "For a person to be found in civil contempt, the moving party must prove that: (1) the contemnor had notice of the specific order or decree that he disobeyed; (2) the act constituting the violation was volitional; and[,] (3) the contemnor acted with wrongful intent." *Gunther v. Bolus*, 853 A.2d 1014, 1017 (Pa. Super. 2004). "The order alleged to have been violated must be definite, clear, and specific – leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct and is to be strictly construed." *Id.* (internal quotations, citations, and emphasis omitted).

Appellant's first two issues on appeal contend that the trial court erred when it established his support obligations. These claims immediately fail,

---

[4] There is no question that the trial court found Appellant in civil (and not criminal) contempt of court. *Gunther v. Bolus*, 853 A.2d 1014, 1016 (Pa. Super. 2004) ("[i]n the most basic terms, if the dominant purpose [of the sanction] is to coerce the contemnor to comply with a court order, it is civil [contempt]; if the dominant purpose is to punish the contemnor for a past violation, it is criminal").

as they constitute mere attempts to re-litigate the merits of the underlying, June 24, 2014 support order. *See Schoffstall v. Schoffstall*, 527 A.2d 567, 571 (Pa. Super. 1987) (holding that, in a contempt proceeding, a party may not re-litigate the merits of the underlying support order).

Next, Appellant claims that the trial court erred when it found him in willful violation of the support order. According to Appellant, the trial court "appears to have rested its finding [of contempt] on the notion that [Appellant] must have been able to find more lucrative employment despite the complete paucity of any evidence." Appellant's Brief at 27. This claim fails. The record supports the trial court's determination that Appellant willfully chose to remain underemployed – and thereby impede his ability to pay the required amounts of support. Therefore, the record supports the trial court's determination that Appellant willfully chose to violate the support order.

As noted above, the evidence at the April 21, 2015 contempt hearing demonstrated that:

- Appellant was 43 years old and a licensed attorney in good standing in both Pennsylvania and Massachusetts; N.T. Contempt Hearing, 4/21/15, at 33 and 37;
- Appellant's "legal experience include[d] employment as a litigation associate with a large Boston law firm [and] . . . as an attorney [] with Teva Pharmaceuticals, where he held the position of Senior Legal

Director earning in excess of $220,000.00 annually;" Trial Court Opinion, 8/17/15, at 3-4;

- in September 2013, Appellant was involuntarily terminated from Teva Pharmaceuticals; *id.* at 4;

- since September 2013, Appellant held a series of seasonal or part-time positions – none of which were in the legal industry; *id.*;

- "[a]t the time of the [April 2015 contempt] hearing, [Appellant was] working two part-time jobs. [Appellant's] first job [was] as an independent contractor for Astoria Marketing providing lifeline phones to low income families, where he [was] paid on a commission basis. In addition, [Appellant] work[ed] as a salesman for Summit Retail Solutions, Inc., selling pillows to department stores or warehouses earning approximately [$12.00] per hour as an advance against commissions;" *id.*;

- at the time of the April 2015 contempt hearing, Appellant had no rent or car payment obligations; N.T. Contempt Hearing, 4/21/15, at 28-29;

- during the contempt hearing, Appellant provided no documentary evidence that he attempted to obtain employment as an attorney and he further testified that he chose not to attempt to become a solo practitioner; Trial Court Opinion, 8/17/15, at 4;

- during the contempt hearing, Appellant testified that he represented himself in a variety of pending legal actions – and that, as a result of

- 10 -

this time commitment, it was (in Appellant's words) "difficult for me to hang out a shingle;" N.T. Contempt Hearing, 4/21/15, at 46 and 53;

- at the time of the contempt hearing, Appellant had a support arrears balance of $35,273.56; *id.* at 24.

- at the time of the April 21, 2015 contempt hearing, Appellant paid a total of $1,757.23 in support payments during the 2015 calendar year; *id.* at 24-25.

This evidence thoroughly supports the trial court's factual determination that Appellant willfully chose to remain underemployed and that he willfully chose to avoid his court-ordered support obligations. As the trial court correctly notes, given Appellant's age, education, experience, and bar admissions, there is simply no reason "why he cannot pursue a legal career." Trial Court Opinion, 8/17/15, at 9. Therefore, we conclude that the evidence supports the trial court's determination that Appellant willfully violated the support order. Appellant's claim to the contrary fails.

Next, Appellant claims that the trial court erred when it set the $5,000.00 purge condition. Appellant argues that the trial court failed to "determine beyond a reasonable doubt that [Appellant] . . . [had the] 'present ability' to pay the purge factor on the day of the order." Appellant's Brief at 29. This claim fails.

As our Supreme Court has explained:

"The use of the [civil contempt] power to enforce compliance is exercised with the objective of compelling performance and not inflicting punishment."

> *Commonwealth ex rel. Beghian v. Beghian*, [184 A.2d 270, 272 (Pa. 1962)]. In accordance with this principle, [the Supreme Court has] indicated that a court may not convert a coercive sentence into a punitive one by imposing conditions that the contemnor cannot perform and thereby purge himself of the contempt. . . .
>
> [W]here, as here, the court in civil proceedings finds there has been willful noncompliance with its earlier support orders constituting contempt but the contemnor presents evidence of his present inability to comply and make up the arrears, the court, in imposing coercive imprisonment for civil contempt, should set conditions for purging the contempt and effecting release from imprisonment with which it is convinced [b]eyond a reasonable doubt, from the totality of the evidence before it, the contemnor has the present ability to comply. Since to condition a person's avoidance of or release from imprisonment on his performing acts beyond his power to perform is in effect to convert a coercive sentence into a penal one without the safeguards of criminal procedure, we are of the opinion that the stricter evidentiary standard of the criminal law should apply with regard to the issue of present ability.

*Barrett*, 368 A.2d at 620-621.

Appellant claims that the trial court committed reversible error in establishing the $5,000.00 purge amount, as there was insufficient evidence to demonstrate that Appellant had "the 'present ability' to pay the purge factor on the day of the order." Appellant's Brief at 29. As the trial court correctly notes, this argument is specious in light of the fact that Appellant "made payment of the purge [amount] on **April 24, 2015**, **three days after** the entry of [the trial court's] contempt order." Trial Court Opinion, 8/17/15, at 10 (emphasis added). Appellant's argument is also meritless because the record at the April 21, 2015 contempt hearing revealed that: the trial court provided Appellant with seven days to secure the $5,000.00

purge amount; Appellant had no rent or car payment obligations; Appellant worked two jobs (only one of which was subject to a wage garnishment order); Appellant had the capacity to pursue solo practitioner legal work; notwithstanding the fact that Appellant had no rent or car payment obligations and worked two jobs, Appellant had only paid $1,757.23 in support payments during the 2015 calendar year; and, Appellant had recently been able to secure a $12,000.00 loan from a family member to pay a purge amount in another contempt proceeding. Thus, the record demonstrates that, when the contempt order was issued, Appellant possessed liquid funds, untapped avenues for achieving additional funds, and the present ability to secure a loan. The record is therefore sufficient to establish that Appellant had "the present ability to comply" with the $5,000.00 purge amount when the trial court issued its April 21, 2015 contempt order. Appellant's fourth numbered claim on appeal fails.

Appellant's final claim on appeal contends that the trial court erred "in failing to make findings or conclusions that the evidence supported a present ability to pay the court ordered support and otherwise comply with the Pennsylvania and United States Constitutions." Appellant's Brief at 6. Appellant failed to provide this Court with any argument on this issue. Therefore, Appellant's fifth numbered claim on appeal is waived. **See Commonwealth v. Delvalle**, 74 A.3d 1081, 1086-1087 (Pa. Super. 2013) (holding that the failure of an appellant to develop a claim in the argument section of his brief will result in the waiver of the claim on appeal).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/19/2016