527 A.2d 567

**Edith SCHOFFSTALL**

v.

**Ronald SCHOFFSTALL, Appellant.**

Superior Court of Pennsylvania.

Argued March 17, 1987.

Filed June 19, 1987.

Petition for Allowance of Appeal Denied Nov. 25, 1987.

142

Alexander A. Bluestone, Pittsburgh, for appellant.

Stanley I. Selkowitz, McKeesport, for appellee.

Before ROWLEY, DEL SOLE and TAMILIA, JJ.

TAMILIA, Judge:

This is an appeal from an Order dated June 23, 1986, adjudging the appellant to be in contempt and imposing sanctions for failure to comply with an Order to pay alimony pendente lite. To better understand this case and the events that led to the contempt Order, we believe a review of the history as shown by the record is desirable.

Appellant/husband filed a complaint in divorce against appellee/wife in August of 1984. As part of her answer, appellee/wife included claims for equitable distribution, alimony, alimony pendente lite, counsel fees, costs and expenses.

After a hearing, the hearing officer made recommendations as to alimony pendente lite and exceptions were filed. Upon agreement of the parties, the recommendations were vacated and the matter was again listed before a hearing officer. After a second hearing, during which time the hearing officer entered a recommendation that appellant pay $390 per month as alimony pendente lite plus $130 per month on arrearages set at $1,560, the trial court, on April

15, 1985, entered an Order in accordance with the hearing officer's recommendations.

On June 27, 1985, appellee/wife filed a petition for contempt alleging that no payments had yet been made. On July 19, 1985, the court entered an Order finding appellant in contempt and stating that appellant could purge himself of the contempt by compliance with the Order. On July 31, 1985, after a hearing before Judge Kaplan, the court found appellant had not complied with the Order and, therefore, ordered him incarcerated until he made a $1,000 payment to appellee. After a day of incarceration, appellant paid the $1,000 and the Order was vacated.

On January 22, 1986, the parties again appeared before the hearing officer for a hearing on a contempt petition filed by appellee and on appellant's petition for modification of the pendente lite Order and for enforcement of a purported settlement agreement. On March 13, 1986, the hearing officer recommended that appellant's petitions be denied and further recommended that appellant be found in contempt of court. Appellant was given an opportunity to purge himself of the contempt by (1) making a payment of $1,000 against arrearages by April 29 and (2) keeping the existing support Order current. Exceptions were filed to the recommendations but were dismissed by Judge Standish on May 12, 1986. The Order also affirmed the hearing officer's finding of contempt and stated that appellant would be sent before a judge for possible incarceration if he failed to comply with the Order. Appellant appealed the Order to our Court; however, we *sua sponte* quashed the appeal as no sanctions were imposed and thus the contempt Order was found to be interlocutory.

This case was then scheduled for a review for compliance before a hearing officer on June 23, 1986. On that date, after the initial hearing, the hearing officer requested that Judge Wettick hear the matter because of the possibility that appellant would be placed in jail. As of June 23, 1986, appellant had made only one $100 payment on the support Order following the March 13, 1986 hearing and he also had

failed to make the lump sum payment of $1,000. Thus at the time of the hearing, appellant owed arrearages of approximately $6,000 on the April 1985 Order. On June 23, 1986, Judge Wettick found appellant in continuing contempt of court. The Order stated that he could purge himself of the contempt by paying $600 by June 30, 1986, $600 by July 30, 1986, $600 by August 28, 1986 and $600 by September 16, 1986, and if he failed to make the payment on any successive date, he would be incarcerated. This appeal followed.[1]

Appellant now contends the court below erred in finding him to be in contempt on June 23, 1986 without permitting him to testify as to his present financial ability and, thereby, to purge himself of the contempt Order.

The lower court, in a footnote to his Slip Opinion, describes the practice utilized by the court in civil contempt proceedings as follows:

> Under the practices of this Court, an evidentiary hearing on a petition for civil contempt is conducted by a hearing officer. However, only a judge may enter an order adjudicating a party to be in contempt of court. A judge will enter such an order upon recommendation of the hearing officer if no exceptions are filed to the recommendation. If exceptions are filed, a judge will enter such a [sic] order only if, after reviewing the record, he or she determines that the party is in contempt of court. Furthermore, a party may be committed to jail only after an evidentiary hearing before a judge. These practices permit this court to respond promptly to the failure of a party to comply with a support order while limiting judicial involvement to those cases in which an order committing a defendant to jail may be appropriate.

(Slip Op., Wettick, J., 12/10/86, p. 2).

We agree with appellant's assertion that he must be permitted to introduce evidence as to his ability to pay the amount necessary to purge himself of contempt. Here, Judge Wettick had an evidentiary hearing at which the

1. The Order was stayed pending appeal.

appellant was present, represented by counsel and testified. The greater part of the hearing consisted of appellant's attempt to go behind the Order and to establish that it was unreasonable *ab initio*.[2] As the lower court held, this was a matter properly relegated to the petition and hearing on modification, which was denied, and may not be relitigated at the contempt proceeding. The testimony presented by appellant as to his present ability to pay (or lack of it) was that he was behind in his rent four months (T.T. 6/23/86, p. 9), he has moved and stays with his mother and friends (T.T. 6/23/86, p. 10) and he claims indebtedness of $4,000 and an inability to raise $1,000 required by the court (master) to purge himself of contempt (T.T. 6/23/86, p. 22). He acknowledged that he has present income of $250 per week. The jointly owned home is also a partial asset which could be considered as an asset in purging himself of the contempt, once sale is completed.

The hearing officer was sworn and testified (T.T. 6/23/86, p. 10) that appellant had a Ram Charger truck, was fully employed and failed to pay any amount beyond $100 since the earlier Order. The testimony also revealed appellant's daughter, who he earlier claimed lived with him, no longer does so. However, appellant's counsel attempted to introduce evidence concerning appellant's financial circumstances as they related to the initial Order, but the lower court rebuffed his attempts. The lower court was correct in refusing testimony as to appellant's financial ability to pay the alimony pendente lite Order entered on April 15, 1985. The issue before the court on June 23, 1986 was whether appellant could be held in contempt for failure to satisfy his obligations. On that issue, Judge Wettick found the appellant was in contempt and that he had a present ability to pay.

The issue before us is whether, pursuant to procedures established for conducting civil contempt hearings in sup-

**2.** Trial counsel was first employed at the contempt proceeding before the master as appellant was represented by other counsel during earlier hearings. He thus had difficulty accepting that the Orders of alimony and arrearages were reasonable.

port and alimony cases, the appellant had the requisite opportunity to establish his lack of ability to pay.

It is clear that when a party fails to comply with an Order directing payment of alimony pendente lite, the court may exercise its civil contempt power to enforce compliance with its Order.

> The power to punish for contempt, including the power to inflict summary punishment, is a right inherent in the courts and is incidental to the grant of judicial power under the Constitution. *Commonwealth v. Marcone*, 487 Pa. 572, 410 A.2d 759 (1980); *Commonwealth v. Haefner*, 470 Pa. 392, 368 A.2d 686 (1977). A court may exercise its civil contempt power to enforce compliance with its orders or decrees if its purpose is to compel performance and not to inflict punishment. *Barrett v. Barrett*, 470 Pa. 253, 368 A.2d 616 (1977); *Petition of Specter*, 439 Pa. 404, 268 A.2d 104 (1970); *Commonwealth v. Feick*, 294 Pa.Super. 110, 439 A.2d 774 (1982). The characteristic that distinguishes civil from criminal contempt is the ability of the contemnor to purge himself of civil contempt by complying with the court's directive. *In re Martorano, supra* [464 Pa. 66, 346 A.2d 22 (1975)]; *Janet D. v. Carros*, 240 Pa.Super. 291, 362 A.2d 1060 (1976).

*Hopkinson v. Hopkinson*, 323 Pa.Super. 404, 411, 470 A.2d 981, 985 (1984).

▮ While this case involves an Order of alimony pendente lite, pursuant to 23 P.S. § 502, Alimony pendente lite, counsel fees and expenses, and is enforceable pursuant to 23 P.S. § 503, Enforcement of arrearages, the provisions for enforcement are identical to those employed for support proceedings, not incident to divorce and governed by Pa.R. C.P. 1910.29, Enforcement of support. This becomes more apparent when we consider that the legislature has provided for payment of support, alimony and alimony pendente lite through the Domestic Relations section of the court, which would then be responsible for notifying the court of default pursuant to 23 P.S. § 504, Payment of support, alimony and alimony pendente lite. Obviously the legisla-

ture did not intend there to be two sections and two procedures for enforcement of an identical obligation and we, therefore, conclude that the provisions for enforcement of support, pursuant to Pa.R.C.P. 1910.20 and 1910.21, are applicable here.

Rule 1910.20 of Pa.R.C.P. provides that "a support order may be enforced by contempt proceedings pursuant to Rule 1910.21." Rule 1910.21, Civil Contempt, sets forth the procedural law of contempt proceedings in support actions. The rule provides for a hearing on the petition for contempt. In *Crislip v. Harshman*, 343 Pa.Super. 349, 365 A.2d 1260 (1976), five elements were essential to a civil contempt adjudication: (1) rule to show cause why an attachment should not issue, (2) an answer and hearing, (3) a rule absolute (arrest), (4) a hearing on the contempt citation and (5) an adjudication of contempt. This was found to be onerous, unworkable and wasteful of staff and judicial time without increasing protection to the contemnor or aiding in resolution of the arrearage problem. Rule 1910.21 has streamlined the proceeding providing timely and adequate notice to the contemnor, by regular mail, with safeguard for continuing the case for personal service (Pa. R.C.P. 1910.21(c)). The issuance of a bench warrant, pursuant to Rule 1910.13, will generally occur only after personal service for a continued hearing was served on the defendant and ignored. Should a warrant issue from the court instead of personal service because of exigent circumstances, the defendant must be brought to court for a hearing and he may not be jailed prior to hearing. The evolution of support proceedings has come 180° from summary proceedings commenced by jailing a defendant, to dealing with the issue of support as a family matter in which the goal is to obtain support and produce the defendant in court, rather than to punish by jailing him.

In *Barrett, supra,* the Supreme Court held:

[W]here, as here, the court in civil proceedings finds there has been willful noncompliance with its earlier support orders constituting contempt but the contemnor presents evidence of his present inability to comply and make up

the arrears, the court, in imposing coercive imprisonment for civil contempt, should set conditions for purging the contempt and effecting release from imprisonment with which it is convinced *beyond a reasonable doubt*, from the totality of the evidence before it, the contemnor has the present ability to comply. Since to condition a person's avoidance of or release from imprisonment on his performing acts beyond his power to perform is in effect to convert a coercive sentence into a penal one without the safeguards of criminal procedure, we are of the opinion that the stricter evidentiary standard of the criminal law should apply with regard to the issue of present ability. (Citations omitted).

*Id.* 470 Pa. at 621, 368 A.2d at 621. *See also; Muraco v. Pitulski,* 470 Pa. 269, 368 A.2d 624 (1977).

The standard of review in alimony cases is the abuse of discretion standard. *Remick v. Remick,* 310 Pa.Super. 23, 456 A.2d 163 (1983). We may sustain the lower court if its decision can be sustained on any ground whatsoever without regard to the reasons the trial court relied upon. *Hopkinson, supra* 323 Pa.Super. at 411, 470 A.2d at 985.

 Here, the trial court pursued a proceeding of which we approve.[3] The hearing officer conducted a preliminary hearing, after notice, on the contempt petition. When it appeared the appellant could not defend his actions of willful noncompliance with the support Order, aside from a

---

**3.** This approval does not extend to that part of the practice described by the lower court, in which the court, without the presence of the hearing officer and the contemnor, would sign an Order of contempt and impose sanctions, upon the recommendation of the hearing officer, if no exceptions are filed. We are troubled by a procedure which does not require that the defendant appear in court before a judge for a hearing prior to a finding of contempt. An evidentiary hearing, *after* such a finding, seems to be an inversion of due process of law. This is particularly so when it appears that the rules on Civil Contempt, 1910.21(c), very carefully spell out the procedure requiring the defendant to be produced before the court. We have carefully turned away from the exhaustive procedures spelled out in *Crislip* for establishing contempt by a defendant, but to place our imprimatur on a proceeding in which contempt is found, on the recommendation of the master without a personal appearance before the court, invites abuses even in a court so well operated as that of Allegheny County.

desire to relitigate that Order, the case was adjourned to a hearing before the court *de novo* on the contempt issue. The trial judge properly limited the hearing to the issue of willful noncompliance with the alimony Order. The appellant was given adequate opportunity to testify concerning his present ability to comply with the sanctions proposed by the court. He was in arrears $6,000, was required to pay $600 on four successive dates or be jailed and to continue payment in full thereafter. The appellant was unable to persuade the court that, with his present resources, he could not comply with that Order. We believe the hearing was adequate, the Order and sanctions measured and fair and that the court properly concluded, beyond a reasonable doubt, that appellant had the present ability to pay.[4] The lower court could properly treat, with some skepticism, the appellant's failure to pay rent in the past four months, his giving up his apartment and living with his mother and his alleged indebtedness of $4,000 when he continued to pay other bills, remained employed and failed to explain his hardship, particularly when the alimony Order went unpaid. Throughout, the appellant has had the capacity to purge himself of the civil contempt, by compliance with the Order. He has avoided his obligation for a considerable period of time and is properly required at this time to fulfill that obligation. The Order of the lower court is affirmed. The plight of the payees of support Orders (mostly women and children) is onerous, and the burden on the staffs and judges in Domestic Relations Divisions and Family Divisions is overwhelming in enforcing the support and alimony obligations. We must do all that is necessary to uphold the reasonable enforcement process through wage attachment and contempt proceedings to discourage obligors who otherwise would ignore their responsibilities.

Order affirmed.

**4.** This conforms with the requirement that the court not confuse the coercive and prospective function of imprisonment in civil contempt with criminal punishment for past acts. In *Barrett v. Barrett,* 470 Pa. 253, 368 A.2d 616 (1977), the Supreme Court stated the fact that husband might be indigent at time of imprisonment had no bearing on his failure to support his wife and children when he was able.