J. S01021/17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| R.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| R.E.W., | : | |
| | : | |
| Appellant | : | No. 2076 MDA 2015 |

Appeal from the Order Entered October 19, 2015
In the Court of Common Pleas of Bradford County
Civil Division at No(s): 03 FC 000411

BEFORE: GANTMAN, P.J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY DUBOW, J.: **FILED FEBRUARY 17, 2017**

R.E.W. ("Appellant") appeals from the October 19, 2015 Order finding him in contempt for failure to pay child support arrearages and imposing a sixty-day term of incarceration, with a purge condition of $10,000. After careful review, we affirm.

The parties, divorced in November 2003, have three children. Since November 2003, the parties have been embroiled in nearly constant, contentious proceedings pertaining to child custody and support. In addition, there have been numerous contempt proceedings filed against both parties over the years as the case has proceeded, sometimes simultaneously, through modification proceedings in Orphans' Court and enforcement proceedings via the Bradford County Domestic Relations Office

("DRO"). Below is the remaining factual and procedural history that is relevant to this Appeal.

On May 9, 2013, the DRO filed a Petition for Contempt against Appellant for failing to pay support pursuant to a January 29, 2009 Support Order.[1] Arrears at that time totaled $13,421.237. On May 23, 2013, in response to a Petition filed by Appellant, the trial court suspended Appellant's child support obligation after he proved that he had suffered serious injuries in a car accident and was unable to work. The court dismissed the Contempt Petition.

On September 4, 2014, the court temporarily reinstated the January 29, 2009 Support Order pending the final decision on modification petitions that had been filed by both parties. On December 3, 2014, the DRO filed a Petition for Contempt against Appellant for failing to comply with the reinstatement Order, noting that the arrears totaled $14,469.79.

After a hearing before a Special Master on the aforementioned modification petitions, the court entered an Order accepting the Master's recommendations and directing Appellant to pay $1,570 per month for the period of August 27, 2013 to August 17, 2014; and $1,362 per month

---

[1] The January 29, 2009 Order directed Appellant to pay $717.72 per month plus $30.00 per month in arrears.

effective August 18, 2014,[2] plus $100.00 per month on the arrears. **See** Order, entered 1/12/15. In the Findings of Fact supporting the Order, the Master specifically found that Appellant's physical condition had considerably improved since May 2013, and that he had not provided any competent medical evidence showing that he was unable to work or that he suffered a disability. The Master also found that Appellant had "gone to great efforts to obfuscate his income" and that he "devotes a considerable amount of his time to his business endeavors[.]". Findings of Fact, dated 1/04/15 at 1, ¶5.[3] The Master noted that Appellant testified to having received approximately $348,174.00 in gross receipts from his businesses in 2013 and noted that he also earned occasional additional income as a constable. *Id*. at 3, ¶10.

The Master imputed Appellee's income, derived from her seasonal employment as a bus driver, as $1,250 per month for support purposes. *Id.* at ¶12. Noting that Appellant had not provided any proposed method by which to determine his income, and finding Appellant's testimony regarding his expenses and the information in his tax return to be "of dubious credibility, at best," the Master accepted Appellee's calculation and imputed

---

[2] The parties' eldest child attained eighteen years of age on August 18, 2014.

[3] The Master also observed that Appellant repeatedly failed to comply with document production orders, causing unnecessary delay and a limited record from which to determine his net income. **See Findings of Fact, supra** at 2-3, ¶¶6-11.

Appellant's income to be $5,939.68 per month for purposes of support. *Id*. at 4, ¶¶15-17. The Master noted that the May 2013 Order suspending the support Order had given Appellant "breathing room necessary to save his business," but that his "error [now] is that he is continuing to claim disability and poverty long after the crisis has passed" with no evidence to support it. *Id*. at 4-5, ¶¶16, 18. The trial court entered the Order accepting the Master's Recommendation on January 12, 2015.[4]

On February 17, 2015, after a hearing on the DRO's December 2014 Contempt Petition, the court found Appellant to be in contempt and sentenced him to a period of incarceration of 60 days, with a purge condition. Appellant subsequently reached an agreement with the DRO to meet the purge condition by paying in three installments. He satisfied that agreement, met the purge condition of $1500, and the court vacated the contempt Order.

On April 27, 2015, Appellant filed a Petition to Modify the January 12, 2015 support Order, alleging that he was unable to work due to medical conditions.

On June 8, 2015, the DRO filed a Petition for Contempt against Appellant for failing to pay child support as ordered on January 12, 2015, noting that arrearages totaled $41,888.66 as of June 5, 2015.

---

[4] Appellant filed Exceptions to the Findings of Fact on January 29, 2015. The court heard argument on the Exceptions on April 17, 2015, and denied and dismissed the Exceptions on August 21, 2015.

On July 21, 2015, after a hearing before the Special Master, the court dismissed Appellant's April 27, 2015 Modification Petition and recommended that the January 2015 Order remain in full force. The court accepted the Master's Findings of Fact, in which he had noted that the physician verification form Appellant had submitted did not establish any new injury or other substantial and relevant change in circumstances. *See* Findings of Fact, dated 7/21/15, at ¶4. The Findings of Fact accepted by the court also noted the following:

> The Findings of Fact and Order dated 01/04/2015 specifically recognized that "although Mr. Wilkinson still has certain physical limitations, he was nonetheless able to operate his business profitably even after his accident by relying on the physical efforts and even the administrative assistance of his various employees." (01/04/2015 Finding of Fact No. 10). It is therefore too late to introduce such documentation in connection [with Appellant's] prior petitions and irrelevant to any new claim because the current order was entered in full contemplation of [Appellant's] ongoing physical limitations.

Findings of Fact, dated 7/21/15, at ¶5.

On August 18, 2015, the court held a hearing on June 2015 Contempt Petition during which Appellant explained that he was so far behind in his child support payments because of his 2012 car accident and his alleged inability to work. After hearing argument that Appellant continued to operate his businesses, the court noted that the Master had not believed the doctor's report about Appellant's alleged inability to work. The court then continued the contempt hearing to a later date, "at which time the court expects the defendant to have all of the evidence necessary to substantiate

his positions." N.T., 8/18/15, at 15. The court also stated to Appellant: "You need to hire yourself an attorney [ ] or else apply for the Public Defender, one of the two." *Id*.

On October 19, 2015, the contempt hearing resumed. Appellant appeared *pro se*. Jared Davis, an Enforcement Officer with the DRO, testified that arrears totaled $46,625.99. He testified further that, in addition to $1,500.00 paid to purge the February 17, 2015 contempt order, Appellant had made just two $400 payments and two $100 payments in 2015.[5] On cross-examination, Mr. Davis testified regarding enforcement efforts that had been implemented. Appellant showed Mr. Davis a physician verification form indicating that he had certain work restrictions, but not that he was unable to work. The court admitted the form into evidence.[6] *See* N.T. at 11-12.

Appellant did not present any evidence to show his inability to pay the support order. Rather, Appellant argued that he was disabled from physical

---

[5] In addition, the DRO received $ 630.67 as a result of the seizure of one of Appellant's bank accounts pursuant to a June 5, 2015 Order.

[6] At the end of the hearing, counsel for the DRO attempted to enter a physician verification form, which it characterized as "the most recent physician verification form [that] indicates very clearly, that while there are restrictions, they preclude any indication that [Appellant] is disabled." N.T., 10/19/15, at 24. The court denied the admission because the "evidentiary portion of the hearing has been concluded." *Id*. It is not clear if this was the same physician verification form that the court had already admitted, or another one from a folder of forms Appellant had handed to counsel during the hearing.

labor and could not drive due to his medications. He admitted, however, that he had performed some subcontracting work through his business. *See* N.T., 10/19/15, at 14.

The court noted that the Special Master had already made specific findings that Appellant had not established that he did not have an income or that his expenses had eaten into his business income so much that he was unable to pay the support that had been ordered. *Id*. at 21. The court noted:

> Alright, listen, your focus seems, as I look at the record, to be purely on this question of whether or not you are disabled from physical labor. The Master's hearing, and the Master's findings focus on the fact that despite those limitations, you've been able to operate the business and that there has been substantial income to that business. And where your case falls apart is, you didn't do anything to document the expenses you've got and so the ledger shows income and not expenses.

*Id*. at 19.

The court concluded that Appellant had willfully failed to comply with the Support Order, adjudicated Appellant in contempt, and ordered him imprisoned for sixty days, which it suspended to allow Appellant the opportunity to purge himself of the contempt by paying the sum of $10,000 by December 18, 2015. *See* N.T., 10/19/15, at 25. In response, Appellant stated that "unless one of the lawsuits gets settled, there's no way Ten Thousand Dollars [is] being paid." *Id*. at 26.

Appellant filed a Notice of Appeal *pro se* on November 16, 2015. Both Appellant and the trial court complied with Pa.R.A.P. 1925.[7]

Appellant raises the following questions for our review in his counseled Brief:

> A. Whether the Court below erred in finding [Appellant] guilty of contempt where R[.]S[.] failed to introduce into evidence any proof that [Appellant] had the present ability to pay the amount if support ordered by the court.
>
> B. Whether the court below erred in imposing a sixty[-]day jail sentence for contempt of a support order if [Appellant] did not purge himself by the payment of $10,000.00 where the record shows that no evidence was admitted at the contempt hearing that would show that [Appellant] had the present ability to pay that amount.

Appellant's Brief at 4.

Because both of Appellant's issues are determined by the issue of burden of proof, we address them together.

We review civil contempt orders for an abuse of discretion. ***Orfield v. Weindel***, 52 A.3d 275, 278 (Pa. Super. 2012). "The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason." ***Childress v. Bogosian***, 12 A.3d 448, 465 (Pa. Super. 2011).

An order of contempt may be entered if a court determines that a person "willfully fails to comply" with a support order. 23 Pa.C.S. § 4345(a).

---

[7] The trial court subsequently stayed the October 19, 2015 Contempt Order pending appeal.

A term of imprisonment for a period up to six months may be imposed, provided the order specifies a "condition the fulfillment of which will result in [release]." 23 Pa.C.S. § 4345(b). **See also Childress**, **supra** at 465.

> Civil contempt differs from criminal contempt in that it seeks only to coerce the defendant to do what a court had previously ordered him to do. A court may not impose punishment in a civil contempt proceeding when it is clearly established that the alleged contemnor is unable to comply with the terms of the order.

**Turner v. Rogers**, 564 U.S. 431, 441–42 (2011) (internal quotation marks, ellipses, and citations omitted).

While the burden is on the complaining party to prove noncompliance by a preponderance of the evidence, the "present inability to comply is an affirmative defense which must be proved by the alleged contemnor." **Barrett v. Barrett**, 368 A.2d 616, 621 (Pa. 1977).

With respect to the imposition of a purge condition, our Supreme Court has held that

> [W]here, as here, the court in civil proceedings finds there has been willful noncompliance with its earlier support orders constituting contempt **but the contemnor presents evidence of his present inability to comply** and make up the arrears, the court, in imposing coercive imprisonment for civil contempt, should set conditions for purging the contempt and effecting release from imprisonment with which it is convinced [b]eyond a reasonable doubt, from the totality of the evidence before it, the contemnor has the present ability to comply.

**Id**. (emphasis added).

Appellant avers that he was denied the opportunity to "provide a full explanation and supporting documents regarding his injuries and how those

injuries prevent him from earning income." Appellant's Brief at 9. He further avers that the court erred in failing to make an "express finding" that he had the present ability to pay. *Id*. (citing *Turner v. Rogers*, 564 U.S. 431 (2011)).[8] He further contends that the contempt order was improper because "[n]o evidence was presented of his present ability to purge himself of contempt as is required by *Muraco v. Pitulski*, 368 A.2d 624 (Pa. 1977)." Appellant's Brief at 10. Appellant's arguments fundamentally fail to acknowledge his burden of proof and, thus, fail to support his request for relief.

In *Pitulski*, our Supreme Court reversed and remanded after concluding that the trial court had erred in disregarding specific evidence presented by the appellant showing his inability to comply with a child support order. *Id*. at 626. The Court observed that, "where in a civil contempt proceeding **the contemnor presents evidence of his present inability** to comply with the order in question, the court in imposing coercive imprisonment should set conditions for purging the contempt with which it is convinced beyond a reasonable doubt, from the totality of the evidence before it, the contemnor has the present ability to comply." *Id*. (citing *Barrett*, *supra*) (emphasis added).

---

[8] In *Turner*, the issue was whether the 14th Amendment entitles an indigent contemnor to counsel in a civil contempt proceeding. *See Turner*, 564 U.S. at 444 (Majority Op.), and 450 (Thomas, J., dissenting). Appellant has not raised that same issue here.

As a first matter, we note that Appellant fails to cite to where in the proceedings the trial court allegedly denied him an opportunity to present his evidence of his inability to pay. By not referencing where in the record the supposed denial occurred, Appellant fails to comply with Pa.R.A.P. 2119(c). It is not the role of this Court to scour the record to find evidence to support a litigant's argument. *See J.J. DeLuca Co., Inc. v. Toll Naval Assocs.*, 56 A.3d 402, 411 (Pa. Super. 2012) (finding undeveloped argument waived). Accordingly, his argument is waived.

Even if it were not waived, we would find Appellant's argument to be without merit. Contrary to Appellant's assertion, the trial court afforded him at least two different opportunities to present evidence in court that he had an inability to pay: once on August 18, 2015, and again on October 19, 2015. Instead, Appellant presented argument and scant evidence to support his claim that he is disabled. He, thus, failed to take advantage of the clear opportunities he was afforded, rendering his argument meritless.

Secondly, *Pitulski* provides no support for Appellant's argument. Unlike the appellant in *Pitulski*, Appellant here presented no evidence of his present inability to comply with the support order, despite the trial court's continuation of the contempt hearing from August to October so that Appellant could obtain evidence to support his position. Rather, he argued that he was disabled and unable to work, contrary to what the Master had concluded. As the trial court observed, Appellant was attempting a "second

bite at the apple," rather than addressing the issue at hand. N.T., 10/19/15 at 20.

Thirdly, contrary to Appellant's implication, it was not the trial court's or his ex-wife's or the DRO's burden; it was Appellant's burden to show that he had "a present inability to comply." *Barrett*, *supra* at 621. While Appellant argued to the trial court that his business income had gone down, that he was involved in lawsuits, and that he had filed for bankruptcy, he did not provide any documentation or other evidence to support his contention that he was unable to pay his support order. Because Appellant failed to do so, the court properly concluded that he had failed to show his present inability to pay.

With respect to the purge condition, as the *Barrett* court noted, it is only "where the contemnor presents evidence of his present inability to comply [with the support order] and make up the arrears," that the court must determine that the contemnor "has the present ability" to pay the purge condition. *Barrett*, *supra* at 621. Since Appellant did not show his present inability to comply with the support order, the court was not under an obligation to determine his present ability to pay the purge condition.

Moreover, Appellant's bald statement that he could not meet the $10,000 purge condition unless he settled a lawsuit was not sufficient to satisfy his burden.

Our review of the record indicates that, in light of the totality of the evidence before it, the trial court did not abuse its discretion in finding Appellant in contempt or in imposing a purge condition of $10,000. Accordingly, we affirm the Order.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/17/2017