[J-40-2025] [OAJC: Wecht, J.]
**IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT**

| | | |
|---|---|---|
| NICOLE R. BREDBENNER | : | No. 53 MAP 2024 |
| | : | |
| | : | Appeal from the Order of the |
| v. | : | Superior Court at No. 19 MDA 2023, |
| | : | entered on August 15, 2023, |
| | : | Vacating and Remanding the Order |
| MICHAEL HALL, SR. | : | of the Lebanon County Court of |
| | : | Common Pleas, Domestic Relations, |
| | : | at Nos. 2015-5-0577 and PACSES |
| APPEAL OF:  LEBANON COUNTY | : | 257115382, entered on December |
| DOMESTIC RELATIONS OFFICE | : | 2, 2022 |
| | : | |
| | : | ARGUED:  May 14, 2025 |

**CONCURRING OPINION**

**CHIEF JUSTICE TODD**                    **DECIDED:  March 26, 2026**

This case involves the interplay between a child's right to the financial support of a parent and a parent's due process right not to be imprisoned for his or her inability to pay a purge condition in a child support civil contempt proceeding.  Based upon this Court's decision in *Barrett v. Barrett*, 368 A.2d 616 (Pa. 1977), the Opinion Announcing the Judgment of the Court ("OAJC") finds that the petitioning party seeking contempt here, the Lebanon County Domestic Relations Office ("DRO"), bears the burden of proving beyond a reasonable doubt that the parent, Michael Hall, has the present ability to satisfy the purge condition of paying $2,000 in support arrearages.  Finding that the DRO failed to satisfy this burden, the OAJC affirms the Superior Court's decision, which vacated the trial court's imposition of a 100-day term of imprisonment.  I concur in the OAJC's mandate, as I agree that there was insufficient evidence to establish that Hall had the present ability to satisfy the purge condition, thereby rendering unlawful the trial court's

imposition of a term of imprisonment. I write separately, however, as I conceptualize the process and burdens in determining whether the contemnor has the present ability to pay the purge condition somewhat differently than the OAJC.

Under my interpretation of *Barrett* and subsequently enacted Pennsylvania Rule of Civil Procedure 1910.25(b), discussed in detail *infra*, the burden does not lie exclusively on the petitioning party to prove beyond a reasonable doubt that the contemnor has the present ability to pay the purge condition. Distinct from a criminal trial — where the Commonwealth must prove each element of the crime beyond a reasonable doubt and the defendant bears no evidentiary burden — in my view, the contemnor in a child support civil contempt proceeding has the initial burden of production[1] to present some evidence of their inability to pay the purge condition.[2] In the event a recalcitrant contemnor refuses to present such evidence or fails to adequately respond to inquiries regarding the same, the trial court may, and should, in my opinion, compel disclosure of the contemnor's financial records by employing its power of contempt. The petitioning party thereafter bears the burden of persuasion to rebut the contemnor's evidence and may present its own evidence demonstrating that the contemnor indeed has the present ability to pay the

---

[1] The term "burden of proof" consists of two separate burdens: (1) "the burden of production or going forward," which is "the burden of *producing* satisfactory evidence of a particular fact in issue;" and (2) the "burden of persuasion," which entails "*persuading* the trier of fact that the fact alleged is indeed true." *Commonwealth v. Enimpah*, 62 A.3d 1028, 1032 (Pa. Super. 2013) (emphasis original) (citations omitted).

[2] As referenced *infra*, such evidence of financial circumstances may be relevant to the trial court's initial determination of whether the party is in civil contempt for willfully violating the support order, *see* 23 Pa.C.S. § 4345(a) (setting forth the general rule that a person who willfully fails to comply with a support order may be adjudicated in contempt, which is punishable by either imprisonment not to exceed six months, a fine not to exceed $1,000, or probation not to exceed one year), and, if the party is found in contempt, the evidence is vital to the trial court's subsequent determination, relevant here, of whether the contemnor has the present ability to satisfy the condition set by the trial court to purge the contempt, *see id.* § 4345(b) (providing that an order committing a person to jail "shall specify the condition the fulfillment of which will result in the release of the obligor").

purge condition. Critically, however, *Barrett* makes clear that, to impose coercive imprisonment for civil contempt, the trial court must be convinced beyond a reasonable doubt, based upon a totality of the evidence presented by both the contemnor and the petitioning party, that the contemnor has the present ability to pay the purge condition; otherwise, the punishment imposed by the trial court ceases to be coercive, and becomes punitive, without affording the contemnor the requisite criminal safeguards.

This paradigm, supported by our case law and civil procedural rules, diminishes the contemnor's ability to manipulate the contempt process by ensuring the insufficiency of the evidence establishing their present ability to pay the purge condition, guarantees the contemnor's due process right not to face imprisonment based upon their indigency, and serves to protect the children who rely upon the contemnor's financial support to provide their daily needs.

In reaching this conclusion, I agree with the OAJC that the pivotal case on the issue is our prior decision in *Barrett*, which examined "whether an indigent person who in the past willfully disobeyed support orders may now be imprisoned for civil contempt when he cannot purge himself of contempt due to his indigency." *Barrett*, 368 A.2d at 619. Preliminarily, the Court emphasized that, "in determining whether Barrett was properly imprisoned for civil contempt, the crucial question is not whether he willfully and contemptuously violated the original orders, but whether he had the present ability to comply with the conditions set by the court for purging himself of his contempt." *Id.* at 620.

Pertinently, in determining whether "the conditions imposed by the trial court to coerce Barrett into compliance were warranted," the court explained:

> [T]he general rule is that in civil contempt proceedings the burden is on the complaining party to prove noncompliance by a preponderance of the evidence, but that present inability

> to comply is an affirmative defense which must be proved by the alleged contemnor. We now hold, however, that where, as here, the court in civil proceedings finds there has been willful noncompliance with its earlier support orders constituting contempt but the contemnor presents evidence of his present inability to comply and make up the arrears, the court, in imposing coercive imprisonment for civil contempt, should set conditions for purging the contempt and effecting release from imprisonment with which it is convinced [b]eyond a reasonable doubt, from the totality of the evidence before it, the contemnor has the present ability to comply.

*Id.* at 621 (internal citations omitted).

Consistent with the OAJC, I interpret the first sentence in the above passage as holding that the party seeking contempt has the burden of proving by a preponderance of the evidence that the alleged contemnor failed to comply with the support order, and that such alleged contemnor may assert, as an affirmative defense, evidence of a present inability to comply with the support order to avoid a contempt adjudication. As the OAJC explains, by referring to the "alleged contemnor," *Barrett's* directive in this regard refers to the first stage of the bifurcated contempt proceeding — wherein the court determines whether there was a willful violation of the support order — and does not govern the inquiry, relevant here, regarding which party bears the burden of proving the contemnor's present ability to pay the subsequently-imposed purge condition. Thus, the OAJC properly concludes that "*Barrett* does not support the proposition that the obligor [(contemnor)] has a burden to prove an inability to pay as an affirmative defense to the purge condition." OAJC at 17.[3]

---

[3] The Superior Court's published decisions have likewise attributed *Barrett's* "affirmative defense" language as applicable to the trial court's contempt determination — and not to the determination of whether a contemnor has the present ability to comply with the purge condition — as demonstrated by that court's consistent vacating of illegal purge conditions on grounds of insufficient evidence of the contemnor's present ability to comply therewith, and remanding for further factual development on that issue, rather than treating an alleged inability to comply with a purge condition as an affirmative defense (continued…)

That is not to say, however, that the contemnor bears no burden at all in demonstrating an inability to pay the purge condition. In my view, the next sentence of the above-quoted passage governs this appeal, as it pertains directly to the second stage of the bifurcated contempt proceeding, during which the trial court fashions the condition for purging the contempt and determines the contemnor's ability to satisfy that condition. As noted, *Barrett* directs that, after the party is found in contempt for violating the support order and where "the contemnor [(as opposed to the "alleged contemnor")] presents evidence of his present inability to comply and make up the arrears," the trial court "should set conditions for purging the contempt and effecting release from imprisonment with which it is convinced [b]eyond a reasonable doubt, from the totality of the evidence before it, the contemnor has the present ability to comply." *Barrett*, 368 A.2d at 621.

While this language is admittedly not a model of clarity, it unmistakably contemplates the contemnor's presentation of some evidence of their financial circumstances to assist the trial court in determining a purge condition with which the contemnor has a present ability to comply.[4] Simply put, requiring the contemnor to

---

which must be established by the contemnor. *See, e.g., Godfrey v. Godfrey*, 894 A.2d 776, 784 (Pa. Super. 2006); *Hyle v. Hyle*, 868 A.2d 601, 606 (Pa. Super. 2005); *Wetzel v. Suchanek*, 541 A.2d 761, 764 (Pa. Super. 1988); *Travitzky Travitzky*, 534 A.2d 1081, 1086 (Pa. Super. 1987); *Durant v. Durant*, 489 A.2d 266, 268-69 (Pa. Super. 1985); *Commonwealth ex rel. Heimbrook v. Heimbrook*, 441 A.2d 1242, 1244 (Pa. Super. 1982); *but see R.S. v. R.E.W.*, 2017 WL 657743, *13 (Pa. Super. 2017) (unpublished memorandum) (interpreting *Barrett* as placing the burden on the contemnor to demonstrate his inability to comply with a purge condition). Further, as the OAJC cogently notes, "[v]iewing the inability to pay as an affirmative defense is inconsistent with the outcome in *Barrett*," OAJC at 17, which vacated the illegal purge condition and remanded for further proceedings.

[4] As the OAJC relied upon *Barrett's* use of the term "alleged contemnor" in the first sentence of the quoted passage, *see* OAJC at 16, I likewise find equal significance in *Barrett's* utilization of the term "contemnor," without the modifier "alleged," in the second sentence of the excerpt when discussing the later stage of the contempt proceeding, during which the trial court determines the contemnor's ability to pay the purge condition.

present some evidence of an inability to pay a purge condition is inconsistent with placing a burden solely on the petitioning party to establish, beyond a reasonable doubt, that the contemnor has the present ability to pay.[5]

Further, unlike the OAJC, I do not view *Barrett's* adoption of the heightened criminal evidentiary standard of proof beyond a reasonable doubt for determining a present ability to pay a purge condition as "inconsistent with placing the burden [of proof] on the obligor to prove his inability to pay," *id.* at 17, as standards and burdens of proof are discrete legal concepts. *See In re Navarra*, 185 A.3d 342, 354 n.5 (Pa. Super. 2018) (explaining that a "burden of proof" delineates which party "must come forward with evidence" and "convince a judge that a fact has been established;" a standard of proof "refers to the degree or level of proof demanded in a specific case"). Moreover, *Barrett* elucidated that its adoption of the beyond-a-reasonable-doubt standard was intended to prevent courts from conditioning the release of a contemnor from prison based on the "perform[ance of] acts beyond [the contemnor's] power to perform," thereby "convert[ing] a coercive sentence into a penal one without the safeguards of criminal procedure." *Barrett*, 368 A.2d at 621. While *Barrett* definitively holds that a determination of an ability to pay a purge condition must be grounded in record evidence and must be established beyond a reasonable doubt, the decision, as I interpret it, does not create a presumption of an inability to pay, or place upon the petitioning party the *exclusive* burden to demonstrate the contemnor's present ability to pay the purge condition.

---

[5] *Barrett* likewise acknowledged that the petitioning party also bears a burden in the determination of an appropriate purge condition. *See Barrett*, 368 A.2d at 621 n.3 ("Since a proceeding in civil contempt remains essentially civil, despite the quasi-criminal element of possible imprisonment, our rules of civil discovery are applicable and should be freely employed to aid the complaining party in attempting to prove the alleged contemnor's present ability beyond a reasonable doubt."). In my view, the petitioning party's burden in this regard is one of persuasion.

Indeed, in that case, Barrett presented evidence of his inability to comply with the purge condition, establishing that he had earned nearly $150 per month to cover his living expenses; that he received no public assistance; that his girlfriend financially supported him; and that his assets included an old car with negligible value and $70 in an unspecified account. Notably, the petitioning party did not meaningfully refute such evidence, which remained "essentially uncontradicted." *Id.* at 622. Deeming Barrett an unreliable witness, the trial court determined that he, in fact, possessed a present ability to pay the total purge amount of $1,000. This Court repudiated such ruling, concluding that "there was insufficient evidence that Barrett had the present financial ability to comply with the contempt orders and avoid imprisonment," *id.*, thereby rejecting the trial court's finding of a present ability to pay based on its mere discrediting of Barrett's evidence of indigency. Thus, the Court remanded for further proceedings to determine an appropriate purge amount.

Our decision in *Muraco v. Pitulski*, 368 A.2d 624 (Pa. 1997), decided the same day as *Barrett*, similarly suggests that the contemnor bears a burden of providing some evidence of an inability to pay the purge condition. There, the contemnor, who was sentenced to imprisonment with a purge amount, presented evidence that he was unemployed; that his income derived exclusively from a modest, monthly amount of public assistance; that he owned no property; and that he had no bank accounts — which evidence the petitioning party did not contradict. This Court interpreted *Barrett's* holding as, "where in a civil contempt proceeding the contemnor presents evidence of his present inability to comply with the order in question, the court in imposing coercive imprisonment should set conditions for purging the contempt with which it is convinced beyond a reasonable doubt, from the totality of the evidence before it, the contemnor has the present ability to comply." *Id.* at 626. We ultimately concluded in *Muraco* that the trial

court abused its discretion by imposing a term of imprisonment where the evidence submitted by the contemnor, which remained uncontradicted by the petitioning party, was insufficient to demonstrate beyond a reasonable doubt that the contemnor had the present ability to pay the purge amount and, as in *Barrettt,* we remanded for further proceedings to determine an appropriate purge condition.

While this Court has not revisited the issue since our rulings in *Barrett* and *Muraco*, we have adopted rules of civil procedure directly addressing an obligor's obligation to present evidence of their financial circumstances at a contempt hearing in a support matter. Specifically, Pennsylvania Rule of Civil Procedure 1910.25(b) provides a form order of the court which the petitioning party shall provide to an obligor in a civil contempt proceeding, informing the obligor, *inter alia*, that: "[a] critical issue in the contempt proceeding is your ability to pay and comply with the terms of the support order;" "[i]f the court finds that you have willfully failed to comply with its order for support, you may be found to be in contempt of court and committed to jail, fined or both;" "[y]ou will have the opportunity to disclose income, other financial information and any relevant personal information at the conference/hearing so that the court can determine if you have the ability to pay," and "may fill out the enclosed Income Statement and Expense Statement forms and submit them to the court." Pa.R.Civ.P. 1910.25(b).

Germane here, the form order states:

> At the conference/hearing, the contempt petition may be dismissed, new and/or modified purge conditions may be imposed, or the judge may order you to jail. If the obligee fails to appear, the court will proceed with the case and enter an appropriate order.
>
> *YOU ARE REQUIRED TO BRING*:
>
> Your most recent pay stub for any and all employers

> Payroll address, phone number, fax number and contact person
>
> Proof of medical coverage
>
> Any other documentation relevant to your case and the issue of contempt as stated in the petition, including the completed Income Statement and Expense Statement forms. For example, other documentation that may be relevant includes documents related to claims for unemployment compensation, workers' compensation and Social Security benefits.

*Id.* (emphasis original); *see also* Pa.R.Civ.P. 1910.25(f) (reiterating the requisite information to be given an obligor in a civil contempt proceeding).[6]

These rules require not only the disclosure of the contemnor's critical financial information relating to their ability to pay, but the production by the contemnor of such evidence at the contempt hearing. As noted, such mandated evidentiary production is inconsistent with the OAJC's placement of the exclusive burden of proof upon the petitioning party to prove the contemnor's present ability to pay the purge condition beyond a reasonable doubt.

In my view, trial courts should enforce these existing civil procedural rules to ensure that a contemnor complies with their initial burden of producing pay stubs, proof of medical coverage, records of the receipt of any benefits, the completed Income

---

[6] This Court adopted subsections (b) and (f) of Rule 1910.25 in 2012, in response to the high Court's decision in *Turner v. Rogers*, 131 S.Ct. 2507 (2011). Recognizing that child support contempt proceedings may threaten an erroneous deprivation of a contemnor's liberty interest, the high Court in *Turner* held that the Due Process Clause of the Fourteenth Amendment to the United States Constitution does not require the appointment of counsel in child support civil contempt proceedings where the state provides alternative procedural safeguards, such as adequate notice of the importance of the ability-to-pay determination, a fair opportunity to present and dispute relevant information, and an express finding by the court that the obligor has an ability to pay. *Id.* at 2519. While Rule 1910.25 certainly guarantees these procedural safeguards, it likewise imposes upon an obligor an express duty to present at the contempt proceeding the specified financial evidence.

Statement and Expense Statement forms referred to in Rule 1910.25(b), and any other documentation relevant to both the contempt adjudication and the determination of a present ability to pay a purge condition. Indeed, when faced with a recalcitrant contemnor, trial courts should order the contemnor to produce the financial evidence enumerated in Rule 1910.25(b). If the contemnor refuses to either comply with such order or demonstrate why such documentation does not exist, the trial court may find the contemnor in contempt for violating the production order and, possibly, impose a conditional term of imprisonment — an action for which the contemnor would "hold the keys" to his imprisonment, as the contemnor could avoid the penalty by presenting the requested documentation or demonstrating why they are unable to do so.

Once the contemnor produces the pertinent documentation, the petitioning party would then bear the burden of persuading the trial court that the contemnor has the present ability to pay the purge condition and may offer its own evidence refuting the evidence presented by the contemnor. Consistent with our mandate in *Barrett*, the trial court would then proceed to "set conditions for purging the contempt and effecting release from imprisonment with which it is convinced [b]eyond a reasonable doubt, *from the totality of the evidence before it*, the contemnor has the present ability to comply." *Barrett*, 368 A.2d at 621 (emphasis added).

Admittedly, compelling a contemnor to present such information is not a simple task, as many individuals who fail to fulfill their child support obligation lack financial records to prove their indigency. Nevertheless, placing the exclusive burden on the petitioning party to prove the contemnor's present ability to pay the purge condition allows the contemnor to profit from their failure to disclose existing financial information and incentivizes the refusal to follow the civil procedural rules, thereby enabling the contemnor to ensure the insufficiency of the evidence establishing their present ability to pay the

purge condition. Manipulation of the child support system cannot be countenanced, as parents must be held to the fundamental requirement of providing support for their children, who rely upon such financial contributions to fulfill their daily needs.

This appeal illustrates the obstacles trial courts face when dealing with a parent who repeatedly fails to comply with serial orders directing the parent to provide financial support for his own children. The trial court exercised great restraint in dealing with Hall, providing him the "proverbial benefit of the doubt" multiple times, considering that Hall avoided contempt on twelve separate occasions over a period of eight years. Trial Court Opinion, 1/26/23, at 13, 14-15. Regarding the instant contempt proceeding, the trial court ultimately declared, "Enough is enough," *id.* at 15, and concluded that Hall's pattern of providing child support payments at the last minute when faced with a potential sentence of imprisonment in the past indicated that he must also presently possess funds to satisfy the purge condition which required payment of $2,000 in support arrearages.

I am compelled to agree with the OAJC that this ruling fails to comport with our legal standard set forth in *Barrett.* Hall testified that he was unemployed and that his brother provided his exclusive financial support. Critically, the DRO did not refute such evidence, and the trial court did not compel Hall to provide documentation of his financial status in accordance with Rule 1910.25(b) to assist the court in calculating a purge condition with which Hall could presently comply. As such, I concur with the OAJC that the Superior Court properly reversed the trial court's order and remanded for further proceedings to determine an appropriate purge condition.

In closing, I stress that trial courts conducting child support civil contempt proceedings must vigorously protect against any threat of an erroneous deprivation of a contemnor's liberty interest by ensuring that the evidence of record establishes, beyond a reasonable doubt, that the contemnor has the present ability to comply with the purge

condition. Equally significant, trial courts must strive to compel the contemnor to assist in such determination by presenting the requisite financial information required under our civil procedural rules to guarantee that the children of this Commonwealth receive the support to which they are entitled.

Justices Dougherty and Mundy join this concurring opinion.